## RAYMOND AND ANOTHER *vs.* STURGES.

In an action on the case, the declaration alleged, that the defendants, having brought a petition to the superior court, for the foreclosure of a mortgage of a certain piece of land, therein described, which had been executed to them, by the plaintiff, to secure a note given by them to him, it was agreed between the plaintiff and the defendants, before the decree was passed thereon, that the time for redeeming the mortgaged property should be limited to the first Monday of January, 1851, but that the defendants procured a decree thereon, that it should be redeemed, previous to said last-mentioned day; *viz.*, on, or before the first day of January, 1851, and, that, after said decree was passed, the defendants falsely, and fraudulently, and for the purpose of preventing the plaintiff from redeeming said mortgaged premises within the time so limited for that purpose, represented to the plaintiff, and thereby induced him to believe, that the time so limited was the first Monday of said January; that, under said belief, and under an agreement between the plaintiff and the defendants, made after said first day of January, that the plaintiff might redeem, on the said first Monday of January, the plaintiff omitted to redeem said land, until after said first day of January, but was prepared, and offered to the defendants, to do so, on said first Monday of January, and, on that day, tendered to the defendants the amount due on [said mortgage, which they refused to receive; and that, by means thereof, he was foreclosed from redeeming said premises, and that, in order to have the foreclosure opened, and to obtain the privilege of redeeming, he was obliged to, and did bring his application therefor, to said court, by which said decree was passed, on which he was allowed by said court, to redeem said premises, and that, in consequence of said wrongful conduct of the defendants, he was, in the prosecution of said application, subjected to great expense, trouble, vexation, and loss of time. Held, that such declaration was sufficient, and disclosed a good ground of action against the defendants.

It is not sufficient to constitute duplicity in a declaration, that it appears, from it, that the plaintiff has more than one good cause of action against the defendant, but it is necessary, that it should further appear, that he relies upon more than one cause of action, as a ground of recovery.

Therefore, where, in addition to the cause of action on which it appears, from the declaration, that the plaintiff relies, there are other allegations, which show that he has other causes of action against the defendant, but which are introduced only for the purpose of amplifying his description of the cause of action on which he relies, or of aggravating the damages in the case, or of characterizing the motive of the defendant, in committing the wrong complained of, or of setting out the evidence of the facts, constituting the ground of action relied on, such allegations do not render the declaration double.

Nor does immaterial matter constitute duplicity.

THIS was an action on the case, brought to the superior court for the county of Fairfield.

The declaration alleged, that the plaintiff, on or about the 17th day of June, 1847, gave the defendants a note of hand, of that date, for the payment by him to them of two thousand dollars, on demand, with interest, and on the same day, for security of such payment executed and gave to them a legally executed, attested and acknowledged mortgage deed, of a certain tract of land, lying in the town of Wilton, with buildings thereon, in quantity forty-three acres, more or less; bounded, &c.; that afterward, said note not having been paid, the defendants brought against the plaintiff a petition, dated January 8th, 1850, returnable to said court, at its term on the second Tuesday of February, 1850, for the foreclosure of the plaintiff's equity of redemption in said tract; which petition was duly served, and returned to said court, and entered in the docket thereof; and, at the same time, the defendants brought against the plaintiff an action of ejectment, for the recovery of the possession of said tract and buildings, and also an action of *assumpsit* upon said note, for the recovery of the moneys due thereby, the writs in both of which actions were duly served on the plaintiff, and returnable to, and duly returned to, said court, at its said term of February, and were both duly entered in the docket thereof; that, at said February term of said court, the defendants recovered against the plaintiff judgment on said action of ejectment, for $0.25 damages and $13.94 costs, and judgment on said action on said note for $233.88 damages and $13.32 costs, and upon said petition a decree of foreclosure, the date thereof being March 7th, 1850, in and by which decree, it was, by said court, found that there was then due to the defendants, upon and by said note, the sum of $326.66, and was by said court adjudged and ordered, that, unless the plaintiff should, on or before the first day of January, 1851, pay said sums of $326.66, with interest,

which should accrue thereon, from the date of said decree until the time of said payment, and also the costs and expense of said petition, by said court taxed at $19.94, and said costs in said action of ejectment, then the plaintiff, his heirs, executors and administrators, and each and every of them, and all persons claiming by, from or under him or them, should be forever foreclosed of all right to redeem said mortgaged premises; that before said decree was passed, it was agreed between the plaintiff and defendants, that the time to be fixed for payment, in said decree of foreclosure should be, (if said court should assent thereto,) the first Monday of January, 1851, but said decree was, by mistake, made as aforesaid; that the plaintiff, always, after said decree was so obtained, believed, that the time fixed by said court for such foreclosure was the first Monday of January, 1851, and not earlier; that he was informed by Lewis Raymond, one of the defendants, that said first Monday was the time so fixed, and also told, by the attorney of the defendants, relative to said petition and the moneys so to be paid as aforesaid, that he believed said first Monday was the time so fixed, and the plaintiff had otherwise heard and believed that such was the fact; that said Lewis, on or about the 25th day of December, 1850, told the plaintiff, that the defendants would not exact of him specie, in payment of the sum due to them in the premises, but would receive, in such payment, good bills of any bank in this state; and that, on said 7th day of March, when said decree was made, he paid to the defendants, to be applied upon the sum or sums then due from him to them in the premises, the sum of five hundred dollars, and long before the first day of January, *viz.*, on the second day of April, 1850, two hundred dollars more, to be applied, in like manner, upon the sum or sums then due from him to them in the premises, which said sums were received by the defendants, to be applied accordingly; that, in the early part of said January, and before the first Monday there-

of, it was arranged and agreed between the plaintiff and said attorney of the defendants, that the plaintiff should, on said first Monday, pay, at the office of said attorney, in Norwalk, in said county, the moneys so to be paid, to prevent such foreclosure, to which arrangement and agreement said Lewis, before said first Monday, assented and agreed with the plaintiff; that the plaintiff, confiding in said arrangement and agreement, and still believing said first Monday to be the day so fixed, procured money sufficient for making such payment as aforesaid, *viz.*, $1,800, in good bills of the Fairfield County Bank, so called, being a legally in- corporated bank, located in Norwalk in this state, and imme- diately on that day called on said attorney, at his said office, to make payment as aforesaid, being then and there ready and willing to make such payment, but was then and there informed by said attorney, that said Lewis then had the papers pertaining to said business in his hands, and was then engaged in said Wilton, and that the plaintiff must call on said Lewis, at said Wilton, and there do the requisite business, in making such payment as aforesaid; that the plaintiff, immediately thereafter, and on said first Monday, went to said Wilton and then offered and tendered to said Lewis, payment, in said bills, of the whole amount then remaining due from him to the defendants in the premises, including all the costs aforesaid, and all the sums for which judgment had been so recovered as aforesaid, but said Lewis then and there wrongfully, fraudulently, and contrary to his agreement aforesaid, utterly refused to receive and did not receive the same, nor any part thereof, assigning as a reason for such refusal, that he would receive nothing but specie in such payment, and also, that the time so fixed by said court had already elapsed, which was the first intelligence the plaintiff had received, that said first Monday was not the day so fixed, and he thereupon immediately procured money, in lawful specie, to an amount more than sufficient to make payment to the defendants, of any and all sums then in any

way or manner due from him to them in the premises, according to the facts before set forth, *viz.*, to the amount of $1,765, and on the said first Monday, at said Wilton, made search for said Lewis, that he might make full payment to him in the premises, but could not find him, and then and there tendered to Jesse Raymond, one of the defendants, in said specie, payment of all the sums so as aforesaid in any way due from him to the defendants; that said Jesse then and there wrongfully and fraudulently refused to receive, and would not and did not receive, the same or any part thereof, and the plaintiff was by reason of the premises, unable to do anything more or other than he did, for the making of such payment for the prevention of such foreclosure, and in manner aforesaid the day, in fact so fixed for foreclosure of his said equity of redemption, elapsed and passed by, without payment other than as aforesaid; that immediately thereafter the defendants, by force of an execution by them obtained against the plaintiff, upon said judgment so recovered by them in said action of ejectment, *viz.*, by the levy thereof by a proper officer, had the plaintiff turned out of the possession of his said tract and buildings, and themselves put into possession thereof, and remained in possession thereof, taking the proceeds and profits to themselves, and afterwards caused said execution to be levied, for satisfaction of said damages and costs, for which they so recovered judgment, in said action of ejectment, upon the personal property of the plaintiff, *viz.*, great quantities of unthreshed rye, oats, hay and straw, intending to have said personal property sold, according to law, in satisfaction of said execution; that the plaintiff was, at all times after said decree was so obtained, until and on said first day of January, and until and on said first Monday of January, able, willing, and intending to pay the defendants all moneys, so due as aforesaid to them in the premises, by reason of the facts before set forth, and thus to prevent such foreclosure, and could and would have made such payment for that purpose, on or before said

first day of January, but for having been so informed and so believing as aforesaid, that the time so fixed was the said first Monday as aforesaid, and for having been so by said Lewis deceived, as aforesaid, in relation thereto; that said tract and buildings were worth $1,300 more than the whole amount, in any way so then due to the defendants in the premises from the plaintiff, and well worth $3,000; that all that the defendants, or either of them, said or did as aforesaid, and all that they, or either of them, refused to do as aforesaid, was said, done, and refused to be done as aforesaid, by them wrongfully, fraudulently, corruptly and wickedly, with the wrongful, fraudulent, corrupt and wicked design to prevent the plaintiff's redemption of said tract and buildings in the premises, and thereby obtain, by force of said decree, an absolute title to said tract and buildings, and thus, while they would benefit themselves to the whole amount of the value of said mortgaged property over and above the whole amount due to them in the premises, *viz.*, to the amount of $1,300 and more, defraud and injure the plaintiff to the same amount, by depriving him of his said equity of redemption in manner aforesaid.

That when the defendants were so put into possession, the plaintiff had, in said buildings and upon said tract, large quantities of unthreshed grain, of straw, hay and other personal property, which the defendants, under color of said execution and the levy thereof, and of having the plaintiff so put out of possession as aforesaid, wrongfully, maliciously, and with the unlawful intent to defraud and injure the plaintiff, caused to be removed from said buildings and tract, and without notice to the plaintiff, thrown out in the public highway, and in other places not in possession of the plaintiff, *viz.*, one thousand sheaves of unthreshed grain, worth a large sum, *viz.*, $100; thirty tons of hay, worth a large sum, *viz.*, $300; seventy loads of straw, worth $100, and other personal property, all which, by reason thereof, were greatly damaged, and rendered of no value to the plaintiff; that

the personal property, so taken by the levy of said execution, consisted of a hay-rake, worth a large sum, *viz.*, $15; a large quantity of oat chaff, worth $10; one ton of oat straw, worth $7.50; a stack of hay, worth $20; a stack of corn-stalks, worth $10; and a large quantity, *viz.*, six tons of hay, worth a large sum, *viz.*, $60; all of which said personal property the defendants did afterwards, maliciously, wickedly, and with the evil malicious intent to aggrieve and injure the plaintiff in that behalf, and in abuse and perversion of said levy of execution, and of the process of said court, procure to be, at said Wilton, on or about the 20th day of February, 1851, sold under and in virtue of said execution, and in pursuance of the said levy thereof, as aforesaid; all which said property was so sold at great sacrifice, *viz.*, at prices greatly less than the value thereof, in all amounting to $1,350, and being then and there less by a large sum, *viz.*, $91, than the just value thereof; that the defendants did procure and cause the plaintiff to be put out of possession of said tract and buildings, under and by virtue of said execution as aforesaid, maliciously, wickedly, fraudulently, and with the evil malicious intent to defraud, injure and aggrieve him in that behalf, and in perversion and abuse of said writ of execution and the process of said court, and that, having so procured and caused him to be so put out of possession and themselves as aforesaid to be put into possession as aforesaid, they did thenceforth fraudulently, maliciously, wickedly and with evil intent aforesaid, and in like perversion and abuse of said writ of execution, themselves remain in possession and keep and hold him, the plaintiff, out of possession thereof, for a long space of time, *viz.*, until on or about the first day of April, 1851, and that by reason thereof, he lost, during the whole of that time, the use and benefit of said tract and buildings, and was compelled to keep and fodder his cattle, in other places, which he otherwise would have kept and foddered on said premises; that the defendants did so cause and procure his said personal property to be taken on execution as aforesaid, fraudu-

lently, maliciously, and with the evil malicious intent to injure the plaintiff, and in perversion and abuse of said writ of execution and of the process of said court, and by reason of the facts before averred, he was deprived of hay, straw and provender, for the feeding of his said cattle, was disturbed in his arrangement of his business, subjected to great trouble and expense and otherwise greatly embarrassed, hindered and injured. That, in all the doings and conduct of the defendants above set forth, and in all they or either of them did or said as aforesaid, to do as above set forth, they did wickedly and maliciously combine together, and were then combined with the evil and malicious intent to defraud, aggrieve, and injure the plaintiff in manner aforesaid, and that each of the defendants had, at all times, during all the time aforesaid, full knowledge of each and all the facts before alleged; that, after he was put out of possession as aforesaid, and after the defendants had as aforesaid caused his said personal property to be removed, and said personal property so to be taken on execution, he, at said Wilton, on or about the 10th day of January, 1851, demanded of the defendants the restoration of said tract and buildings and said personal property to him; which the defendants then and there fraudulently, wickedly, maliciously, and with the intent aforesaid refused to restore to him, and in like manner refused to return any part of said personal property or said tract and buildings, and by reason of the premises, the plaintiff, in order to recover again the possession of said tract and buildings, and to compel the defendants to reconvey the same to him, as he was justly entitled to have them reconveyed, was under the necessity of applying, and by the said wrongful conduct of the defendants compelled to apply, and did, on or about the 18th day of January, 1851, apply to the said superior court by petition, by him brought against the defendants, dated the 15th day of January, 1851, and made returnable to said court, at its term on the second Tuesday of February, A. D. 1851, and did, by the consideration of said

court, at its said term, obtain against the defendants a decree, by force of which he was afterwards, on or about said first day of April, restored to the possession of said tract and buildings, and to his just title thereto, on satisfaction made to the defendants pursuant to said decree, of all moneys due from him to them, which satisfaction he had long before offered and endeavored in vain to make to the defendants in manner as aforesaid; which said application of his to said superior court and the said proceedings thereon are more fully shewn by the files and records of said court therein remaining; that, by reason of the wrongful conduct of the defendants above set forth, he was compelled to make and prosecute his application to said court, for the purpose of obtaining possession of said tract and buildings, and his just rights in relation thereto, and in doing the same was necessarily and unavoidably subjected to great trouble, loss of time, and vexation, and to great expense, amounting to $250; but that, although he had, in manner aforesaid, obtained possession of said tract and buildings, and his just title to the same, he had never, in any way, obtained any remuneration or satisfaction whatsoever, for the sacrifice of his said personal property; for the removal, damage to, and loss of his said other personal property, as aforesaid, nor for the so being put and kept out of possession of the said tract and buildings, and other property, nor for any of the damage incident thereto and arising therefrom, nor for his said trouble, loss of time, vexation and expense in so bringing and prosecuting his said petition, &c.

To this declaration, the defendants demurred specially, assigning, as cause of demurrer, 1. That said declaration contains no cause of action at law; 2. That it was double, and if it contained any cause, embraced several distinct causes of action.

This demurrer was overruled, and judgment accordingly rendered for the plaintiff. The defendants thereupon, by motion in error, brought the record before this court for revision.

*Dutton* and *Ferry*, in support of the motion, claimed,

1. That the declaration was bad, for duplicity. The action being on the case, for the abuse of process, in the levy of an execution in ejectment, the proceedings in ejectment, alone, constitute no ground of action. *Phelps* v. *Sage*, 2 Day, 151. *Smith* v. *Vincent*, 15 Conn. R., 1. *Parsons* v. *Wells*, 17 Mass. R., 419.

The declaration therefore proceeds to set out the fraud and misrepresentation of the defendants, regarding a decree of foreclosure, and the consequent damage, which renders it bad. There being but one count, this constitutes duplicity.

2. That the plaintiff has had his remedy in chancery. 1 Sto. Eq. Jur., § 64, R. 65, 66, 68, 73.

*Butler* and *Carter*, contra, contended,

1. That the declaration contains a cause of action at law.

The facts, alleged, and admitted by the demurrer, shew a combination to deceive; to injure the plaintiff, by deceiving him in relation to the law day; and thereby, and in connection therewith, work a pecuniary and malicious injury to the plaintiff, which object was effected.

A court of equity could only open the decree, and allow the plaintiff to redeem. It could not grant him redress for the injuries consequent upon the fraud, by giving damages.

For actual damages, other than loss of title, case was the only remedy. *Ludington* v. *Peck*, 2 Conn. R., 700. 1 Chitt. Pl., 133.

2. The declaration is not double. It shows a fraudulent combination, and conspiracy; the object contemplated; the mode and means, by which they were to be, and were effected; and the actual damage suffered.

STORRS, J. The first question in this case is, whether the declaration sets out a good cause of action.

It states, that the defendants, having brought a petition to the superior court for the foreclosure of a mortgage of a certain piece of land, therein described, which had been exe-

cuted to them by the plaintiff, to secure a note given by them to him, it was agreed between the plaintiff and the defendants, before the decree was passed thereon, that the time for redeeming the mortgaged property should be limited to the first Monday of January, 1851, but that the defendants procured a decree thereon, that it should be redeemed previous to said last mentioned day, *viz.,* on or before the first day of January, 1851, and that, after said decree was passed, the defendants falsely and fraudulently, and for the purpose of preventing the plaintiff from redeeming said mortgaged premises within the time so limited for that purpose, represented to the plaintiffs, and thereby induced them to believe, that the time so limited was the first Monday of said January : that, under said belief, and under an agreement between the plaintiff and defendants, made after the first day of said January, that the plaintiff might redeem on the said first Monday of January, the plaintiff omitted to redeem said land, until after said first day of January, but was prepared and offered to the defendants, to do so, on the said first Monday of January, and on that day tendered to the defendants the amount due on said mortgage, which they refused to receive, and that, by means thereof, he was foreclosed from redeeming said premises, and that, in order to have the foreclosure opened, and to obtain the privilege of redeeming, he was obliged to and did bring his application therefor, to said court, by which said decree was passed, on which he was allowed by said court to redeem said premises, and that, in consequence of said wrongful conduct of the defendants, he was, in the prosecution of said application, subjected to great expense, trouble, vexation and loss of time.   No other facts are stated in the declaration, which qualify or detract from the full force and effect of these allegations.   That these facts disclose a legal cause of action, there can be no doubt. They present a sheer case of fraud practiced by the defendants, on the plaintiff, by means of false representations, in consequence of which the latter was prevented from avail-

ing himself of his right to redeem his property, and was therefore put to great trouble and expense, in his application for relief against the effect of such fraud, beyond his taxable costs on said application. For such trouble and expense the plaintiff can obtain no redress, unless in an action like the present, since it was not competent to the court to which that application was brought, to decree damages to him therefor. Jurisdiction for the recovery of such damages appertained, not to that court, but to a court of law. They constituted a legal, as contradistinguished from an equitable, claim, and are recoverable at law, in an action on the case, as in ordinary cases of damage sustained by one person in consequence of a fraud practiced on him by another. The declaration, therefore, shows a good cause of action.

The remaining question is, whether it is bad for duplicity. The particulars in which it is stated, in the special demurrer, to be double, and which only we can consider on a demurrer for this cause, are, that it sets up, 1. That the defendants enforced the execution issued on their judgment in the ejectment suit mentioned in it; 2. That they sold the personal property of the plaintiff, on said execution; 3. That they violated their promises to the plaintiff; and 4. That they deceived and defrauded the plaintiff. That the declaration states a good cause of action, on the last mentioned ground, has been shewn. Whether any other is sufficiently set forth in the count, so that a judgment on it would be sustained on a writ of error, is very questionable. Perhaps, however, under the rules respecting duplicity, if the plaintiff has sought to recover for any other cause of action in that count, it would be no answer to that objection, that it is so imperfectly set forth, that, if it constituted a distinct count, it would be demurrable. But we have not considered it necessary to examine these questions, because we are of opinion, that if any other cause of action is so stated in this count, that it would not be exceptionable either in substance or form, if contained in a distinct count, there is none so intro-

duced into this declaration as to render it liable to the objection of duplicity. In order to constitute duplicity, it is not sufficient that a count, in a declaration, shews merely that the plaintiff has various causes of action against the defendant, although the contrary might be inferred from the general and loose definitions of duplicity, in some of the elementary treatises on pleading. It is necessary, further, that those various causes of action, or more than one of them, should be claimed and relied on, as distinct grounds of recovery. Dyer, 42, b. Stephen on Pl., 302. For, if it appears, that the plaintiff seeks to recover upon only one of them, and makes no claim on any of the others, as a distinct, additional, or independent ground of recovery, the mere circumstance that he has other valid claims against the defendant, which he might, but does not, seek to enforce in the suit, ought not to deprive him of a recovery on the cause of action, on which alone he seeks to recover. And, in such a case, there can be no multiplicity of issues, to avoid which duplicity is discountenanced.

Nor is the introduction of facts in a count which would constitute a distinct cause of action, considered as duplicity, where such facts are stated, not as a ground of recovery upon them, taken by themselves, but only as constituting part of the entire facts, or cause of action, on which the plaintiff relies for a recovery. Accordingly, in Bac. Ab. K., 2, duplicity is laid down to be, " Where distinct matters, not being part of one entire defence," or, it might be added, ground of recovery, " are attempted to be put in issue." The defendant cannot distort, or vary the claim, which the plaintiff has chosen to make, whatever it is, in order to raise an objection to it. Nor does the statement of immaterial matter, in a declaration, make it double. Steph. Pl., 301. It is very common for the plaintiff, especially in actions *ex delicto*, in connection with the facts on which he claims to recover, to state matters, from which it appears that he has another cause of action against the defendant, either by way of amplifying, or

Raymond and another *v.* Sturges.

strengthening his description of the cause of action on which he relies ; or, perhaps, from a mistaken idea that it is necessary to state, not only the main facts constituting his claim, but also the evidence of those facts and their attending circumstances; or to shew the extent and aggravated character of the injury of which he complains; but the statement of these matters being unnecessary and immaterial, it has never been considered that they rendered the declaration double, where it was apparent that he did not rest his claim to recover, upon them.

On an examination of the declaration in this case, we are satisfied that the claim of the plaintiff ought to be considered as founded on the fraud and deceit, practiced on him by the defendants, in regard to the time limited for the redemption of the premises mortgaged by the plaintiff, and that the statement of the other matters, which are claimed by the defendants, as setting up other causes of action, was made, not with a view of introducing any new or distinct ground of recovery, but only for the other purposes which we have mentioned. The conduct of the defendants, under their execution, in dispossessing the plaintiff of his land, and levying on his personal property, and the violation by the defendants, of their promises, are evidently not introduced as distinct and independent causes of action, but for the purpose of shewing the original fraudulent scheme of the defendants, the manner in which they carried it into effect, and the extent, and character of the injury inflicted on the plaintiff. The objection of duplicity is therefore unfounded, and there is no error in the judgment complained of.

In this opinion the other judges concurred, except HIN-MAN, J., who was disqualified.

Judgment affirmed.