JAMES FORSTER and Another v. COLUMBIA NATIONAL BANK and Another.

June 22, 1899.

Nos. 11,652—(194).

## Action for Services—Verdict Excessive.

- Evidence considered, and *held*, that the award of damages herein is grossly excessive.

Action in the district court for Hennepin county by James Forster and Edward Smith, co-partners as Forster & Smith, to recover $11,804.10 for services rendered to defendant bank. John B. Atwater, receiver of the bank, intervened, and filed an answer on behalf of himself and of the bank. The case was tried before McGee,

J., and a jury, which rendered a verdict in favor of plaintiffs for $891.75; and from an order denying a motion for a new trial, defendant and intervenor appealed. Reversed.

*E. C. Garrigues* and *J. B. Atwater*, for appellants.

*Arthur H. Noyes* and *E. A. Prendergast*, for respondents.

START, C. J.

The complaint herein contained four counts. The first cause of action alleged was that the plaintiffs were employed by the defendant bank, and at its request they performed services of the reasonable value of $587.50 in the prosecution and collection of a claim which the bank had against the Walla Valley Wine Company, of Minneapolis, and that in so doing they paid as necessary expenses the sum of $316.60. The second count was to the effect that the bank was indebted to the plaintiffs in the sum of $150 for services rendered at its request in and about the reconstruction of its mill. The third and fourth causes of action were for services rendered to the bank of the aggregate value of $10,750; but they are not here material, as they were dismissed by the court, and the plaintiffs acquiesced in its action.

The bank became insolvent before the commencement of this action, and a receiver thereof was duly appointed, who intervened and answered herein, denying knowledge or information sufficient to form a belief as to whether the plaintiffs ever rendered any services or paid out any money for the bank as alleged in the complaint. The answer also alleged that the plaintiff Edward Smith was a director of the bank, and, if the services mentioned in the complaint were ever rendered to the bank, they were performed by him as incidental to his position of director, and without any agreement for or expectation of payment, and not by the plaintiffs. The answer also set up, as an offset and counterclaim, a judgment against Smith for $12,154.50, recovered by the intervenor against him on a note due to the bank. The trial court instructed the jury that the plaintiffs could not recover unless the agreement as to the services in question was made with them, and not with Smith alone. The jury returned a verdict for the plaintiffs for $891.75. The defendant and intervenor appealed from an order denying their motion for a new trial.

The appellants here claim that the verdict is not sustained by the evidence, and that the damages awarded are excessive. The plaintiffs were, at the time the alleged services were rendered, partners as builders and contractors, and each was required to devote his entire time to the business of the firm. The services for reconstructing the bank's mill, which are the basis of the second count, were in the line of their business; and the evidence was sufficient to sustain the verdict in favor of the plaintiffs for the amount claimed, $150. If this amount be deducted from the amount of the verdict, we have $741.75 as the damages awarded on the first count. The evidence to support the verdict as to this first cause of action, and the assessment of damages therefor, is not satisfactory,—especially so as to the damages, and as to the finding that the contract was with the plaintiffs, and not with Smith alone. The bank had a note for $3,000 against the wine company, and desired to take measures for its collection. Thereupon the president of the bank, Mr. Kittelson, wired the plaintiff Smith, who was then at Sioux City, Iowa, superintending the erection of a court house for the United States, to come to Minneapolis on important business. He did so, and had an interview with the president, as to which he testified as follows:

"Q. Did the bank turn over into your name the paper it held against the Walla Valley Wine Company? A. Yes, sir. Q. State what was said in the employment of yourself, or Forster & Smith, in this Walla Valley Wine Company business. A. Mr. Kittelson proposed to sign over to Forster & Smith in the forenoon. I objected to it at the time. Objected to having the note signed over to me or the firm,—individually or to the firm. In the afternoon, after consulting with Mr. Forster, I did agree with Mr. Kittelson that the firm would undertake to collect that money,—that note,— as I had no authority personally to agree to it. Mr. Kittelson told me, or asked me, rather, if we would agree to have that note signed over to us, as the bank did not want to have a lawsuit in their name, as it didn't look well to be in the court with it. * * * I agreed to it." He also testified that: "After I had consulted Forster, I did agree with Mr. Kittelson that my name might be used for the note, as that would not require both of us to go into court. * * * The note was signed over in my name, and we did secure an attachment on the place, and closed up the saloon and wine house the next day; and I think about four days later * * * the Walla Valley Wine Company made an assignment."

All that was done by the plaintiffs with reference to prosecuting

the action against the wine company was done by Mr. Smith.  He states that he spent seven days in the service of the bank on his first trip to Minneapolis at the time the action was commenced.  He then returned to Sioux City, but was called back to Minneapolis by the president of the bank, and, as he claims, then rendered 15 days' service to the bank in connection with the actions against the wine company.  He came to Minneapolis a third time, as he testifies, and devoted 12 days to the service of the bank in the matter of the collection of the claim against the wine company; and he came a fourth time to attend the trial of the action, and served the bank 12 days at this time.  His traveling expenses for each trip amounted to $20.40, or $81.60 in all.  He testified that his services were worth $12.50 per day, and his expenses were $5 a day.  The bank paid all the expenses and disbursements connected with the prosecution of the case, including attorney's fees; hence the $5 per day for expenses must refer to his own personal expenses while in Minneapolis.

If it be assumed that these services were rendered by Mr. Smith pursuant to a contract between the president of the bank and the plaintiffs, and that the services were outside of his ordinary duties as a director of the bank, for which he was entitled to compensation, still the plaintiffs would be entitled to receive only the reasonable value of such services as were reasonably necessary for him to render in the prosecution of the bank's claim against the wine company.  The burden was upon the plaintiffs to establish, not only that the services were rendered, but that they were reasonably necessary for the protection of the interests of the bank; for they were rendered pursuant to an agreement between a director and the president of the bank, and this litigation is, in effect, between the plaintiffs and the creditors of the now insolvent bank.  Now, what services did Mr. Smith actually render to the bank?  The first time he came to Minneapolis he took the note to the attorney of the bank, who prepared the papers, which Mr. Smith signed and verified, and procured bondsmen to sign the attachment bond.  He spent two days in investigating before the attachment was issued. He testified that he spent the entire seven days in the service of the bank, but he fails to show any reasonable necessity for his services for so long a time, or, except as stated, what he did.  It

would seem that after the attachment had been levied, and dissolved four days thereafter by the assignment, his occupation was gone. His testimony as to what he did for the bank on his second trip to Minneapolis was this:

"I think I was here on the business connected with this matter on this second trip 15 days. Q. And what did you do during that time? A. I was watching the person that had charge of the Walla Valley Wine Company's place, over on Hennepin avenue. It was then in the hands of an assignee."

His testimony as to the character and extent of his services rendered on his third trip is as follows:

"The amount of time I spent in this same business on my next coming to Minneapolis was 12 days. That was the third time I was here. During those 12 days I was here, representing the bank, to buy the stock and fixtures of the Walla Valley Wine Company; and the time when I come here the sale was supposed to occur the second day, but it was postponed from day to day, * * * and I didn't want to stay here, but Mr. Kittelson wanted me to, and insisted upon it. This is how the stay happened to be so long."

As to the fourth and last term of service he testified that:

"The next time I was here in the matter was in May, 1896. I was here 12 days. During those 12 days I was prosecuting the claim of the Columbia National Bank against the Walla Valley Wine Company. I consulted with the attorneys that were employed, and got witnesses to appear in court, and just practically as if I was conducting a personal case. I worked up the case, and attended to looking after witnesses and securing the evidence."

There is no evidence in the case to show the necessity for bringing Mr. Smith from Sioux City and employing him 15 days to watch the assignee, an officer of the court, or, if a watchman was needed, why it was necessary to employ one whose time was worth $12.50 a day, besides $5 a day for his personal expenses, or to show why it was necessary that he should be employed for 12 days at the same rate for the purpose of attending the assignee's sale to bid on the stock and fixtures of the wine company. Nor does the record disclose why it was necessary to secure his services for 12 days in connection with the trial of the cause. If the $81.60 paid for traveling expenses be deducted from $741.75, the amount the jury must have

awarded on the first cause of action for his services and personal expenses for the 47 days is $660.15, or $14 per day. It is idle further to discuss the matter. The character and term of the services, and the fact that during the time the services were rendered Mr. Smith's home was at Minneapolis, that he was a director of the bank, that he had no personal knowledge as to the claim prosecuted, that it was assigned to him simply to enable the bank to collect it in his name, and that it employed and paid attorneys to attend to the matter, render the award of the jury, of $14 a day for 47 days for his services and personal expenses, so grossly excessive as to justify the conclusion that it was the result of passion and prejudice, and that a new trial must be granted.

Order reversed, and new trial granted.