## D. E. VIRTUE and Another v. CREAMERY PACKAGE MANUFACTURING COMPANY and Another.[1]

August 22, 1913.

Nos. 18,038—(149).

**Infringement of patent — action for false representations.**

1. Defendant Owatonna Manufacturing Company manufactured a combined churn and butter worker. It owned a patent upon a device known as the "two speed," by the use of which the churn was turned rapidly for making butter and slowly for working it. Plaintiffs used a device upon a combined churn and butter worker manufactured by them that would have

[1] Reported in 142 N. W. 930.

Note.—On the question of advice of counsel as defense to action for malicious prosecution, see note in 18 L.R.A.(N.S.) 49.

123 M.—2.

been an infringement had defendant's patent been valid. But it was void. Defendants made representations to plaintiffs' customers that plaintiffs' churn was an infringement on their patent and threatened prosecution for infringement. Such representations and threats were actionable.

**Misrepresentation of competitor's merchandise.**

2. The laws of competition do not countenance misrepresentation of the business or goods of a competitor.

**Liability for agent's tort — question for jury.**

3. There was evidence for the jury, on the question whether the agents making such representations bound defendants, under the rule that a principal is responsible for the torts of his agent committed in the course of his employment or in the line of his duty with a view to the furtherance of his master's business and not for a purpose personal to himself.

**Warning against infringement of patent.**

4. The owner of a patent may, in good faith, warn against infringement and give notice of intention to enforce his rights. But, if his patent is void, he may not make representations of infringement or threats of prosecution to the injury of another.

**Misrepresentations — evidence of damage.**

5. These representations were material. The "two speed" principle was essential to any successful combined churn and butter worker. There is evidence that they damaged plaintiffs.

**Same.**

6. Such representations were not rendered harmless by the fact that plaintiffs' churn was afterwards found to infringe a different patent owned by the other defendant.

**Malicious prosecution of civil action — evidence.**

7. An action will lie for malicious prosecution of a civil suit, though there is no interference with the person or property of the person sued. To maintain such action, plaintiffs must prove malice and palpable want of probable cause.

**Accrual of right of action.**

8. The right of action does not accrue until such suit is terminated favorably to the defendant therein.

**Action for infringement — interlocutory decree.**

9. In the patent infringement suit commenced by the Creamery Package Manufacturing Company against these plaintiffs, an interlocutory decree was entered sustaining that company's claims in substantial particulars. This decree is not res judicata, but it is decisive that these plaintiffs have not yet prevailed.

### Question for jury.

10. As to the patent suit prosecuted in the name of the Owatonna Manufacturing Company, the evidence is sufficient to require submission to the jury of the question whether the prosecution was malicious, and probable cause is not conclusively proven.

### Letters patent — presumption of validity — burden of proof.

11. A patent is presumed valid until the contrary is proven beyond a reasonable doubt, and its issuance, when fairly procured, justifies suit by the patentee for infringement against one using the same device; but, when it is proven that an invention was in use prior to the issuance of the patent, the burden of proof is on the patentee to establish its validity.

### Prior letters patent — evidence.

12. There is evidence that after commencement of the suit for infringement of the "two speed" patent, a conference was had and defendants' attorney showed to the attorney and an officer of the complainants other letters, patent which had been issued prior to the complainants'. This evidence was insufficient to show that the complainants thereafter continued such suits with knowledge that their patent was void, in the absence of proof as to the nature of the prior patents which were so produced.

### Advice of counsel — question for jury.

13. Advice of counsel is a complete defense to an action for malicious prosecution of a civil action only when it appears that the prosecutor fully and fairly stated all the facts within his knowledge, or which by reasonable diligence he might have learned, to a reputable attorney, and that in bringing the action he, in good faith, acted on the advice given him. The question whether in this case these defendants acted in good faith and in reliance on the advice of their counsel, was, under the evidence, for the jury.

### Limitation of action — governing statute.

14. A claim for malicious prosecution of a civil action is ruled by Revised Laws, § 4076, subd. 5, allowing six years for commencement of an action for any injury to person or rights not arising on contract and not by § 4078, limiting action for libel, slander, assault, battery, false imprisonment or other tort resulting in personal injury, to two years.

### Prior action not res judicata.

15. A judgment for defendants in a prior action in the Federal courts to recover treble damages for alleged combination in restraint of trade, in violation of the Sherman Anti-trust Act, was not res judicata of plaintiffs' right to maintain a common-law action for interference with their business by false representations, threats, and malicious prosecution.

**Same.**

16. Combination in restraint of trade was the gist of the action in the Federal court. It is not the gist of the common-law action.

**Joint tort.**

17. A joint tort may be committed without the existence of any conspiracy or combination in restraint of trade.

**Same — question for jury.**

18. The false representations charged in this case were all made by officers or agents of the defendant Creamery Package Manufacturing Company. The infringement suit which failed was in the name of the defendant Owatonna Manufacturing Company. There was evidence to go to the jury as to the liability of both defendants, under the rule that all who actively participate in the commission of a tort, or who procure, command, direct, advise, encourage, aid or abet its commission, or who ratify it, are jointly and severally liable even though they act independently or without concert of action or common purpose, provided their acts concur in tending to produce one resulting event.

**Evidence — verdict excessive.**

19. There was evidence that plaintiffs owned some patents. There was none that their value had been destroyed by the alleged wrongs or as to the extent to which it had been injured. There was evidence that plaintiffs owned a manufacturing plant, but none as to the amount it had been damaged. There was evidence that plaintiffs expended time and money in the defense of the infringement suit. The evidence is vague as to the necessity thereof, and there is no evidence of the value of plaintiffs' time. Plaintiffs claim damages for injury to their business and its good will. Their total sales from the inception of this business were less than $8,000, and the total profits less than $3,000. *Held*, a verdict awarding $57,500 was so excessive as to indicate passion and prejudice.

**Proof of damage.**

20. Damages must be proven with reasonable certainty. To recover damages for injury to property, there must be fair proof of the existence and amount of damage. To recover for expenditure of time and money, there must be evidence of the necessity thereof, and of the value of such time; upon proper proof there may be a recovery for injury to business, its reputation, standing and good will. Such damages must not be speculative and conjectural; yet, where it is certain that damages have accrued to plaintiffs from defendants' wrongful acts, plaintiffs will not be denied a recovery of any damages whatever, solely because of uncertainty as to the amount of damages sustained.

**Admissible evidence.**

21. An exclusive sales contract existing between defendants was admissible to show the relation between them at the time of the acts complained of. The prior contracts between them were immaterial and inadmissible.

**Inadmissible evidence.**

22. Evidence of defendants' prices and profits on churns, and evidence that plaintiffs did not intend to infringe defendants' patents, and believed they were not doing so, was inadmissible.

**Same.**

23. A copy of a writing not shown to have emanated from either of the defendants was inadmissible.

**Same.**

24. A judgment of dismissal is not evidence in a subsequent suit between the same parties for the same cause.

**Election of remedies.**

25. A suit on an alleged cause of action that does not in fact exist, is not an election of remedies.

**Charge to jury erroneous.**

26. It was error to instruct the jury that their verdict must be for or against both defendants and that the only question for them to determine was whether or not there was a conspiracy between them to injure plaintiffs.

**Evidence of collateral facts.**

27. A trial court may, in its discretion, permit evidence of collateral facts when of probative value, but it is error to receive such evidence to such an extent as to overshadow the real issues.

**Charge to jury — new trial.**

28. The court began its charge with instructions on punitive damages, and, after withdrawing from the jury plaintiffs' claim to recover for violation of state and Federal laws relating to contracts in restraint of trade, followed with a long discussion of the proper construction of those laws. The charge was so given as to.furnish insufficient guidance as to the facts necessary to warrant a recovery or as to the measure or elements of damage. There was such failure to charge on vital issues as entitled defendants to a new trial.

Upon petition for reargument.

October 31, 1913.

**Warning against infringement of patent — when privileged — when actionable.**

29. Notices of infringement and threats of suit made by one holding or

claiming an interest in a patent are qualifiedly privileged. If made by one in good faith and in the honest and reasonable belief that his claims are valid, and in an honest effort to protect them from invasion, he is within his rights and will not be liable therefor, even though his patent prove invalid. But if the patentee is pursuing a course which is calculated to unnecessarily injure another's business, and with the intention of so doing, his conduct will be deemed malicious, and, if his patent fails so that his representations are false, they are actionable.

Action in the district court for Steele county by D. E. Virtue and the Owatonna Fanning Mill Company against the Creamery Package Manufacturing Company and the Owatonna Manufacturing Company to recover $165,000 actual damages and $60,000 exemplary damages, in all $225,000. The case was tried before Childress, J., and a jury which rendered a verdict for $57,500 in favor of plaintiffs. From an order denying their separate motions for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed and new trial granted.

*Cohen, Atwater & Shaw, W. A. Sperry* and *A. C. Paul,* for appellants.

*Harlan E. Leach,* for respondents.

HALLAM, J.

Plaintiffs recovered a verdict. Defendants appeal separately from an order denying their alternative motion for judgment notwithstanding the verdict or for a new trial. Together they make 334 assignments of error. It is hardly to be expected that we will take all of these seriously. We will accordingly refer mainly to those argued in the briefs of counsel.

The issues in the case are simple. The Owatonna Fanning Mill Company was incorporated in the early nineties, and has since been engaged in the manufacture of fanning mills and some other farm machinery. Plaintiff Virtue has been the principal factor in the company, financially and **otherwise.** In 1903 or 1904, Virtue and the company, acting together under an agreement, the details of which are not important, commenced the manufacture of a combined

churn and butter worker. They claim that these defendants, conspiring together, wrongfully and maliciously. interfered with this business by misrepresentation, threats of litigation, and the malicious prosecution of two patent infringement suits, and by these acts caused substantial damage. This action is brought to recover actual damages, and punitive damages as well. Defendants deny these charges, and for a further defense allege that some of the issues have been determined by previous litigation. These simple issues are presented by pleadings, which, with amendments and exhibits, fill a volume of 526 pages. It is needless to say that such plethora of allegation serves few of the useful purposes of pleadings, which are by statute required, on the part of plaintiff, to make "a plain and concise statement of facts constituting a cause of action, without unnecessary repetition" [1] and on the part of defendant to consist of "a denial of each allegation of the complaint controverted by the defendant, or an averment that he has not knowledge or information thereof sufficient to form a belief," and "a statement, in ordinary and concise language, of any new matter constituting * * * a defense." [2]

There is evidence tending to prove the following facts:

In 1903, the defendant Creamery Package Manufacturing Company owned a patent upon a combined churn and butter worker, known as the "Victor." This machine had, as part of the mechanism for working butter, four rolls located in pairs parallel with the drum.

The defendant Owatonna Manufacturing Company was engaged in manufacturing a combined churn and butter worker known as the "Disbrow," under several patents originally procured by one Disbrow. This defendant owned another patent, known as the Howe, Ames & La Bare patent, known also as the "two speed" patent. The merit of the device covered by this patent was that it had a "two speed" gear, so that the churn turned rapidly for *making* butter, and slowly for *working* butter. This principle was used in the manufacture of the Disbrow churn.

1 [R. L. 1905, § 4127.]                    2 [R. L. 1905, § 4130.]

These defendants were at this time operating under a contract, by the terms of which the Creamery Package Manufacturing Company was to handle, as sole agent, the combined churns and butter workers manufactured by the Owatonna Manufacturing Company; the Creamery Package Manufacturing Company was not to manufacture the Disbrow churn, but might manufacture and sell others, and the Owatonna Manufacturing Company was entitled to furnish 55 per cent in value of the churns and butter workers sold by the Creamery Package Manufacturing Company. Together these two companies practically controlled the business of the country in this line.

In 1903, plaintiffs commenced the manufacture of a combined churn and butter worker which they named the "Owatonna." This machine embodied the "two speed" principle which was covered by the Howe, Ames & La Bare patent. Instead of four rolls in two pairs, as in the Victor machine, it had three rolls, one on each side of the axis of the churn, and one in the center coincident with the axis and operated with each of the others.

Plaintiffs established some agencies for the sale of these churns, and sold some direct to creameries. They did very little advertising, except to print circulars and send them through the mail to jobbing houses, hardware men, or anybody that they thought might handle their product. Plaintiffs sold 22 machines before July 16, 1904, and 40 during the next $2\frac{1}{2}$ years, at an average price of $126.-50, and an average profit of $46.50 each. Plaintiff Virtue testified that in 1903 and 1904 the business was well known for a business that had been run only so long. There was a good market for combined churns and butter workers extending over the dairy and creamery districts of the United States.

Plaintiffs claim that defendants set out to destroy their business. There is evidence tending to prove this, as follows:

In 1901, one Martin Deeg went to Chicago to confer with the officers of the defendant Creamery Package Manufacturing Company in regard to a contract originally made between Virtue and Deeg, on the one hand, and the Cornish, Curtis & Greene Manufacturing Company on the other, defendant Creamery Package Manufacturing Company having taken over the business of this

latter concern. Deeg testified that in the course of the negotiations he said: "If they don't want to fulfil their contract, why, we will go to work and build our churns ourselves;" that Mr. Gates, the president of the Creamery Package Manufacturing Company then said, "Why, if Mr. Virtue goes to work and builds a churn they will put him against the wall, and then we will make anybody trouble whoever goes into the churn business. If you go to work and build a churn, you will have a lawsuit on your hands and you ain't got the money to fight a lawsuit;" that Mr. Higgs, who was vice-president and general-manager of the Creamery Package Manufacturing Company, said: "We don't want to buy any more patents. We own the Victor patent and we own the Disbrow patent and we cannot use any more; we would sooner fight them, take it into court and spend the money, as to pay any more for a patent."

In May or June, 1904, C. P. Cooper, representing the defendant Creamery Package Manufacturing Company, called upon plaintiff Virtue and said he wanted plaintiffs to handle the Disbrow churn and their creamery supplies in the territory tributary to Owatonna; Mr. Cooper had with him a contract which contained prices at which the goods were to be sold; these prices were higher than the prices which plaintiff was then selling; in the course of the conversation Mr. Cooper said, "You had better take the Disbrow churn and make this contract; we think we own the creamery supply business around here."

In March, 1904, the Pratt Creamery Association was considering the buying of a churn from plaintiffs. Mr. Rice, representing the Creamery Package Manufacturing Company, came before its board of directors and told them that they were liable to be sued if they bought that churn; the association accordingly bought the Disbrow churn.

At about this time, the Columbus Co-Operative Creamery Company, of Elgin, Minnesota, installed one of plaintiffs' churns; soon thereafter Mr. Stone, representing the Creamery Package Manufacturing Company, came along and wanted to put in a Disbrow churn, and said he thought they would have to put in one before long, because it might be that the creamery would be held liable for

using a Virtue churn on account of an infringement on the *Disbrow* churn; that plaintiffs' churn was then taken out and the Disbrow churn put in.

On July 16, 1904, two suits were commenced against plaintiffs for patent infringements, one on behalf of the Creamery Package Manufacturing Company for infringement on the patents embodied in the Victor churn, and one on behalf of the Owatonna Manufacturing Company for infringement upon the Howe, Ames and La Bare, or the "two speed" patent. Both suits were commenced at the same time and the same attorneys represented both plaintiffs. Plaintiffs claim that both of these actions were prosecuted maliciously and without probable cause.

Thereafter and in the latter part of July, 1904, the Coon River Creamery Company, at Newell, Iowa, purchased one of plaintiffs' churns from W. H. Monroe, representing a creamery supply house at Cedar Rapids, Iowa; soon thereafter Mr. Woodring, representing the Creamery Package Manufacturing Company, endeavored to induce the company to take out the plaintiffs' churn and install a Disbrow; he stated that the Creamery Package Manufacturing Company was about to sue the Owatonna Fanning Mill Company for infringement of the *Disbrow* patents, and that, if the creamery company used this churn, they would be sued for infringement, and he further stated that plaintiffs' churn was an infringement on the *Disbrow* patent. Mr. Monroe testified that after this incident he did not push plaintiffs' churn any more; that he didn't want to be bothered with that kind of a fight; that he got another churn to handle principally because he deemed it more than the churn was worth to keep it in a creamery when he got it there, because competitors "laid down" on him too hard.

In 1905, John W. Ladd, of Saginaw, Michigan, engaged in the creamery supply business, sold five of plaintiffs' churns; he received a letter from Paul & Paul, attorneys for the Creamery Package Manufacturing Company, stating that defendants were suing the Owatonna Fanning Mill Company for the infringement on their patents; and in answer to a letter asking what their claims were, they

wrote him that plaintiffs' churn infringed upon the *"two speed"* *gear*.

At about the same time Paul & Paul wrote to the Wacousta Cream-ery Company, to whom Mr. Ladd had sold one of plaintiffs' churns, a letter very similar to the one written to Ladd.

February 2, 1906, defendant Creamery Package Manufacturing Company wrote to Ludwig L. Johnson, of Brookpark, Minnesota, stating that the churn and butter worker made by the Owatonna Fanning Mill Company was an infringement on the *Disbrow* patents.

In 1905, L. A. Disbrow had a conversation with Mr. Higgs. Dis-brow details this as follows: "I told Mr. Higgs that I thought it would have been very much better for the churn business, if they had settled this suit with Mr. Virtue instead of having these law-suits. * * * He said * * * he generally found it easier to law people awhile and then he could buy them out cheaper. He said he didn't see where Mr. Virtue was getting his money to law with. He wanted to know of me how much he was worth and where he got his money from. He says, 'while it doesn't make any differ-ence whether this suit is won by us or lost, Mr. Virtue hasn't the money to follow the cases; we are behind these suits with all our money.'"

There is also evidence of declarations of officers of the Owatonna Manufacturing Company as follows:

Shortly before the date when the patent infringement suits were commenced, Frank La Bare, who was president and director of the defendant Owatonna Manufacturing Company, was at the depot at Owatonna when one G. W. Taylor, a drayman, brought to the depot one of plaintiffs' churns. Mr. La Bare said to Mr. Taylor that he "would not have many more churns to haul for Mr. Virtue, as they were about ready to close in on him."

Soon after the infringement suits were commenced, Frank La Bare said to Martin Deeg: "I don't see why you use so much time in trying to build a churn; you know you cannot get in on the market; we would not let you put it on the market," that Deeg said: "I will try to get a good machine and maybe I can sell it to the Creamery Package Manufacturing Company;" that La Bare answered that they

had commenced a suit against Mr. Virtue for infringing and that if Deeg kept on they would sue him, too.

At about the same time Mr. T. J. Howe, treasurer and general manager of the Owatonna Manufacturing Company, called on Mr. Deeg and said: "We have sued Mr. Virtue. You know we will sue you the same way if you keep on building churns;" that Mr. Deeg said, "Mr. Howe, I am afraid you will lose the suit against Mr. Virtue." Mr. Howe said, "We don't care; we will make him spend all the money he has got, anyway. * * * We can keep going; that is, the Creamery Package Manufacturing Company can fight a suit for years; they have the money and they can do it. They can throw it from one court into another and tire the courts out." "Why, after we get through with him he won't have money enough left to build a churn."

Later, and in 1905, Mr. La Bare said to Reuben Disbrow that Mr. Virtue was very foolish to answer and fight the suit because he couldn't win, that he didn't have money enough to fight it; that the Creamery Package Manufacturing Company was back of it with all their money and Mr. Virtue was very foolish in trying to fight because it would break him up in business, and he said, "I guess he is pretty nearly broke up in business now."

On January 25, 1907, a decree was entered in the infringement suit commenced by the Owatonna Manufacturing Company, adjudging the Howe, Ames and La Bare patent to be void "for lack of invention, in view of the prior art, as to all the claims thereof counted on by the complainant in this cause."

On January 26, 1907, an interlocutory decree was entered in the action instituted by the Creamery Package Manufacturing Company, adjudging that plaintiffs' churn was an infringement upon the patents of said Creamery Package Manufacturing Company in certain particulars, principally in that the three roll device used by plaintiffs was an infringement upon the four roll device used in the Victor churn and an accounting was ordered. Thereafter the defendant Creamery Package Manufacturing Company assigned to the Owatonna Manufacturing Company the costs to be taxed in this suit, and the judgment for costs to be entered therein.

Plaintiff Virtue testified that plaintiffs commenced losing their agencies in 1905; that they lost them all as early as 1907; and that they did but little business by January, 1907.   It would appear that the last sale was made November 19, 1906.   Some time thereafter plaintiffs quit the churn business entirely.

There was evidence that on February 24, 1898, defendant Creamery Package Manufacturing Company and a large number of its competitors entered into a contract in restraint of trade, to control and monopolize the manufacture and sale of combined churns and butter workers.   Defendant Owatonna Manufacturing Company was not a party to this combination, but it was claimed that, by series of other contracts between these defendants, it became party to the unlawful project.

Plaintiffs claim that the foregoing facts established a right to recover damages of both defendants on principles of the common law and also under section 5168, R. L. 1905, of Minnesota, which forbids combinations, in restraint of trade, to control or limit the production of any article, or to prevent or limit competition in the purchase and sale thereof.

Defendants claim that plaintiffs have failed to make a case entitling them to any recovery at all; that there can be no recovery under this statute, because no combination, within the meaning of the statute, has been shown, but, even if such combination has been proven, there is no causal connection between such combination and the damages proven; that, in a former action between these same parties in the Federal courts, there was an adjudication as to these matters; that, therefore, if plaintiffs have any cause of action here, it is for malicious prosecution of either or both of the infringement suits and for damages, if any there be, from the warnings of these suits; that an action for malicious prosecution of the Creamery Package Manufacturing Company's infringement suit will not lie, because the suit has not terminated in favor of these plaintiffs; that an action for malicious prosecution of the Owatonna Manufacturing Company's suit will not lie, because there is no evidence of malice in its prosecution, and the evidence is conclusive that there was probable cause therefor; that the patent itself on which the suit was

brought, though void, was conclusive evidence of the existence of probable cause, and that any such action is barred by the statute of limitations; that the alleged misrepresentations were only warnings given in good faith of the rights claimed in the infringement suits, and were not actionable; that if any cause of action does exist, there were reversible errors in the conduct of the case, in the admission of evidence, and in the charge of the court, which requires the granting of a new trial.

The court charged the jury that they were not to concern themselves with the question whether there were any contracts entered into between these parties which were in restraint of trade, nor whether there was any combination to control the business of this country. This in substance meant that plaintiffs had no cause of action under the statute, and the court in fact only submitted the question of common-law liability of defendants.

We are of the opinion that there is evidence from which a jury might find sufficient facts to constitute a cause of action, but that, by reason of errors, which will be specifically pointed out, a new trial must be granted.

The facts proven made a case for the jury.

1. The evidence shows several instances of representations that plaintiffs' churn was an infringement upon the "Disbrow" patents and upon the "two speed" patent, and threats to customers and prospective customers of plaintiffs of prosecution for infringement of those patents in the event they should use plaintiffs' churn. If the representations that plaintiffs were infringing upon the "Disbrow" patents be taken literally, they are palpably false, since there was no real claim of that sort made by defendants either in the patent litigation or otherwise. If they be taken as representations of infringement upon the "two speed" patent which was in fact used upon the "Disbrow" churn, defendants are in no better position, for though plaintiffs' churn would have been an infringement upon this patent, had the patent been valid, the fact is the patent was void, and a void patent affords no protection against positive representations of this character.[1] A statement made as a positive representation of an existing fact is actionable if it is false, even though the person making

1 See infra, page 45, et seq.

it had ground for belief that it was true. Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360; Shull v. Raymond, 23 Minn. 36.

2. Unquestionably a trader renders himself liable where he misrepresents his competitor in some material matter and thereby causes damage to his competitor's business. The laws of competition do not countenance misrepresentation. Evenson v. Spaulding, 150 Fed. 517, 82 C. C. A. 263, 9 L.R.A.(N.S.) 904; Standard Oil Co. v. Doyle, 118 Ky. 662, 82 S. W. 271, 111 Am. St. 331; Murray v. McGarigla, 69 Wis. 483, 34 N. W. 522; Burr v. Peninsular, 142 Mich. 417, 105 N. W. 858; Van Horn v. Van Horn, 56 N. J. L. 318, 28 Atl. 669; Addison, Torts (8th ed.), 9; Moran v. Dunphy, 177 Mass. 485, 59 N. E. 125, 52 L.R.A. 115, 83 Am. St. 289; Martell v. White, 185 Mass. 255, 69 N. E. 1085, 64 L.R.A. 260, 102 Am. St. 341; Allen v. Flood, A. C. (1898) 1; Hollenback v. Ristine, 114 Iowa, 358, 86 N. W. 377; Cooke, Combinations, p. 12.

The language of the Massachusetts court in Martell v. White, 103 Mass. 255, 260, 59 N. E. 1085, 1087, 64 L.R.A. 260, 263, 102 Am. St. 341 [1904], is applicable here. Hammond, J. said, "The trader has not a free lance. Fight he may, but as a soldier, not as a guerrilla. The right of competition rests upon the doctrine that the interests of the great public are best subserved by permitting the general and natural laws of business to have their full and free operation, and that this end is best attained when the trader is allowed in his business to make free use of these laws. * * * But * * * the weapons used by the trader who relies upon this right for justification must be those furnished by the laws of trade, or at least must not be inconsistent with their free operation. No man can justify an interference with another man's business through fraud or misrepresentation."

3. It is contended that the evidence is insufficient to show that the persons making these statements could bind the corporations by which they were respectively employed. The evidence was sufficient to raise a question for the jury under the rule applicable in such cases, which is as follows: The principal is responsible for the torts of his agent committed within the scope of his agency, that is, in the course of his employment or in the line of his duty, with a view to

the furtherance of the master's business, and not for a purpose personal to himself.    Smith v. Munch, 65 Minn. 256, 68 N. W. 19; Sina v. Carlson, 120 Minn. 283, 139 N. W. 601.

4. It is contended that these statements were merely notices or warnings in good faith to those who were believed to be infringers, and that they are accordingly not actionable.  It is true that the owner of a patent may lawfully warn others against infringement and give notice of his intention to enforce his rights, if done in good faith. Adriance, Platt & Co. v. National Harrow Co. 121 Fed. 827, 58 C. C. A. 163; Warren Featherbone Co. v. Landauer, 151 Fed. 130; Mitchell v. International Tailoring Co. 169 Fed. 145.  But if his patent be void so that he has, in fact, no patent at all, he will not be permitted to make representations of infringement to the injury of another.[1]

5. These representations were material.  The "two speed" principle was essential to the manufacture of any successful combined churn and butter worker.

There is evidence that these representations in fact caused damage to plaintiffs, in preventing sales, in inducing customers who had made purchases to discontinue use of plaintiffs' churn, and in discouraging agents so that they discontinued handling plaintiffs' product.

6. It is true, plaintiffs were at this time infringing upon the "Victor" patent held by the defendant Creamery Package Manufacturing Company.  But this was not a defense to an action for falsely representing that they were infringing upon the "two speed" patent. It might lessen the damages but it was not a bar.

This brings us to a consideration of the liability of the defendants on account of the prosecution of the patent infringement suits.  This is not technically an action for malicious prosecution.  The claim is that these suits were prosecuted maliciously, and without probable cause, as part of a general purpose to injure the business of plaintiffs.

7. An action will lie in a proper case for malicious prosecution of a civil suit, even though there is no interference with the person or property of the defendant.  McPherson v. Runyon, 41 Minn. 524,

[1] See infra, page 46, et seq.

43 N. W. 392, 16 Am. St. 727; Severns v. Brainard, 61 Minn. 265, 63 N. W. 477; Eickhoff v. Fidelity & Casualty Co. 74 Minn. 139, 76 N. W. 1030. The plaintiff must prove both malice and want of probable cause for the prosecution, and the want of probable cause must be very palpable. "A greater latitude in the doctrine of reasonable cause must be exercised in such cases than would be permissible in an action for maliciously prosecuting a criminal case. Before a party can justly be held liable for maliciously prosecuting a civil action, where there was no interference with the person or property of the defendant, want of probable cause must be very clearly proven * * *. Any other rule would make litigation interminable." Eickhoff v. Fidelity Casualty Co. 74 Minn. 139, 142, 76 N. W. 1030; Cooley, Torts, *220.

8. A right of action for malicious prosecution never arises until the litigation complained of has terminated favorably to the party alleging malicious prosecution. Pixley v. Reed, 26 Minn. 80, 1 N. W. 800; Rossiter v. Minnesota Bradner-Smith Paper Co. 37 Minn. 296, 33 N. W. 855; McPherson v. Runyon, 41 Minn. 524, 43 N. W. 392, 16 Am. St. 727.

9. It is clear, therefore, that there can be no right of action for the prosecution of the patent infringement suit commenced by the Creamery Package Manufacturing Company, because that suit has not terminated favorably to these plaintiffs. It has proceeded to an interlocutory decree. That decree was favorable to the Creamery Package Manufacturing Company. It determined that the three roll device used by these plaintiffs was an infringement on the four roll device used in the Victor churn and ordered an accounting. This interlocutory decree is not final or res adjudicata. Harmon v. Struthers, 48 Fed. 260; Australian Knitting Co. v. Gormly, 138 Fed. 92; Hills & Co. v. Hoover (C. C.) 142 Fed. 904; but it is conclusive that these plaintiffs have not yet prevailed in the litigation.

It is true the interlocutory decree determined the case adversely to the Creamery Package Manufacturing Company as to many of its claims of infringement. It is contended that it is a determination of the litigation as to all such claims and that the matters in which these plaintiffs failed are so trifling as compared with all the other

123 M.—3.

matters involved in the case that an action for malicious prosecution will lie. We cannot so hold. The matters as to which these plaintiffs have failed to secure a decree are not of a trifling character. They are substantial. The case differs from Severns v. Brainard, 61 Minn. 265, 63 N. W. 477, cited by plaintiffs. In that case the plaintiff in the basic action recovered nothing except what the defendant all the time stood ready to pay. The suit prosecuted in the name of the Creamery Package Manufacturing Company cannot be considered in this case. It was error to submit it to the jury.

10. Next as to the patent infringement suit prosecuted in the name of the Owatonna Manufacturing Company.

We are of the opinion that, under the evidence above detailed, the question whether that suit was prosecuted maliciously was for the jury; we are also of the opinion that it does not conclusively appear that there was probable cause for its prosecution.

11. It is contended that the fact of issuance of the "two speed" patent, on which the suit was based, was conclusive evidence of such probable cause. We have no hesitation in holding that, as a general proposition, a patent issued by the United States government, and fairly procured, is a justification for a suit for infringement by the patentee, against one using the same device. A patent is presumed valid until the contrary is proven beyond a reasonable doubt. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 301, 15 Sup. Ct. 118, 39 L. ed. 153. But there are cases where the rule that a patent is a justification for an infringement suit cannot apply. It clearly should not apply, if the patent was procured with knowledge of facts that render it invalid, as where the applicant had knowledge that he was not the first inventor. We think it equally clear that if, after the patent is obtained, it is shown to the patentee that by reason of prior invention the patent cannot be sustained, then the patent furnishes no probable cause for an infringement suit, for the rule is when it is proven that the invention was in use prior to the issuance of the patent, then the situation changes and the burden of proof is upon the patentee to establish the validity of his patent. Clark Thread Co. v. Willimantic Linen Co. 140 U. S. 481, 11 Sup. Ct.

846, 35 L. ed. 521; Michigan Central R. Co. v. Consolidated Car-Heating Co. 67 Fed. 121, 14 C. C. A. 232; Caverly v. Deere (C. C.) 52 Fed. 758; Cleveland Foundry Co. v. Kaufmann Bros. (C. C.) 126 Fed. 658; American Soda Fountain Co. v. Sample, 130 Fed. 145, 64 C. C. A. 497.

12. Now apply these principles to this case. This "two speed" patent purported on its face to be a valid patent. Unless impeached, it gave probable cause for the prosecution of the infringement suit. But the patent was in fact void by reason of prior invention. Plaintiffs claim that, at the outset of the patent litigation, these defendants were fully advised of the invalidity of their patent, and that the patent accordingly afforded no probable cause for the prosecution of that litigation. The evidence on this subject is, that after the infringement suits were brought, and before these plaintiffs answered therein, their attorney, Mr. Williamson, entered into negotiations with Mr. Paul, representing the plaintiffs in those suits; that in these negotiations Mr. Williamson showed to Mr. Paul other letters patent which had been issued prior to the "two speed" patent; that T. J. Howe, treasurer and manager of the Owatonna Manufacturing Company, also came to Mr. Williamson's office and asked to see what he had found relating to the suit, and Williamson showed him these prior patents and explained them to him; that Mr. Williamson then asked whether he would go on with the suits, and Howe said he would have to consult with "the others" and that Mr. Paul would let him know; that Mr. Paul said he would have to go to Chicago to consult with the Creamery Package Manufacturing Company. He later wired Williamson from Chicago, "Will proceed with both suits."

The trouble with this evidence is that it furnishes no *facts* as to the nature of the alleged prior patents exhibited to Mr. Paul, and there is accordingly nothing to enable a court or jury to determine whether or nor it was made to appear that the "two speed" patent was void. Such facts may be supplied on a new trial, but unless there is evidence that it was made to appear to these defendants, beyond a reasonable doubt, that their patent was void, it must be held

as a matter of law that there was probable cause for the prosecution of the Owatonna Manufacturing Company's infringement suit.

13. It is contended that there can be no right of action on account of that suit because it was commenced under advice of counsel. The rule is, that "advice of counsel is a complete defense to an action for the malicious prosecution of either a civil action or a criminal charge, when it is made to appear that the prosecutor fully and fairly stated all the facts within his knowledge, or which by reasonable diligence he might have learned, to a reputable attorney, and that in bringing the action or instituting the criminal prosecution he honestly and in good faith relied and acted upon the advice given him. * * * The protection springs from the advice, founded upon a full statement of facts, and good faith reliance thereon. * * * Where the evidence is undisputed, and it clearly appears that all the facts were fully submitted to the attorney, as well as the good faith reliance upon his advice, the question resolves itself into one of law for the court. * * * But, where the facts are in dispute, the question goes to the jury." Nelson v. International Harvester Co. 117 Minn. 298, 304, 135 N. W. 808, 811. We think it does not conclusively appear that the defendants were acting in good faith in reliance on the advice of their counsel. That question was for the jury. It is also to be observed that there is no evidence that, after receiving from Mr. Williamson the information above mentioned, the advice of counsel was ever obtained or sought.

14. Defendants contend that this claim of malicious prosecution is outlawed. We are of the opinion that it is not. This action was commenced a little less than six years after the commencement of the infringement suit. Defendants contend that the claim is governed by Revised Laws 1905, § 4078, which provides that actions for "libel, slander, assault, battery, false imprisonment, or other tort resulting in personal injury" shall be commenced within two years. Plaintiffs contend that it is governed by section 4076, subd. 5, which allows six years for commencement of an action "for any * * * injury to the person or rights of another, not arising on contract and not hereinafter enumerated." We agree with plaintiffs' contention. We shall not take time here to go into the history of this legislation.

It is sufficient to say that the provision of subdivision 5 of section 4076 is the general provision applicable to torts, both against person and property. The provision of subdivision 1 of section 4078 is special, and relates only to the particular class of personal torts that are there particularly mentioned, and other torts of the same nature and kind *"resulting in personal injury."* Brown v. Village of Heron Lake, 67 Minn. 146, 69 N. W. 710. It has been held that the action for malicious prosecution of a criminal charge is within this class. Bryant v. American Surety Co. 69 Minn. 30, 71 N. W. 826.

At first blush it might seem that malicious prosecution of a civil suit should be within the same class, but clearly it is not. The Bryant case was decided on the ground that the malicious prosecution of a criminal action is a personal wrong of the class that dies with the person, and is accordingly of the same class as libel, slander, and false imprisonment. The malicious prosecution of a civil action, on the other hand, is in no sense an injury to the person. We regard this as settled by the decision of this court in Hansen Mercantile Co. v. Wyman, Partridge & Co. 105 Minn. 491, 117 N. W. 926, 21 L.R.A.(N.S.) 727. In that case it was held that an action for maliciously procuring and levying an attachment was an action for an injury not to the person, but to property; that a cause of action for injuries resulting from the attachment, consisting of the destruction of the business and of the credit, reputation and standing of the defendant, and the driving away of customers, was not a personal tort, but a property tort, and that it was assignable. True, there was in that case a seizure of property, but that does not change the principle. No excessive levy or unnecessarily harsh use of the writ is charged. The action was accordingly not one for abuse of legal process. The wrong was in procuring the attachment to issue. The action was therefore to all intents and purposes an action for malicious prosecution of a civil action, and was governed by the same rules. Pixley v. Reed, 26 Minn. 80, 1 N. W. 800. It is also true that in the Hansen case attention was called to the fact that the plaintiff was a corporation, which "in the nature of things * * * cannot bring an action ex delicto for a purely personal tort, nor be awarded purely personal damages." So is one of the plaintiffs here

a corporation. But, it appears to us, that this action assumes the same aspect, whether it be considered from the standpoint of the corporation plaintiff or the individual plaintiff. In either case, the injury is one to business and property and not to the person. It follows that the claim for malicious prosecution was not barred.

15. It is contended that this action is barred by the reason of a prior action brought by these plaintiffs against these same defendants in the United States Circuit Court. 179 Fed. 115, 102 C. C. A. 413, 227 U. S. 8, 33 Sup. Ct. 202, 57 L. ed. 393. In this prior action many of the foregoing matters were alleged and proved. At the close of the testimony the circuit court directed a verdict in favor of defendants. This ruling was sustained on appeal by the circuit court of appeals and the Supreme Court of the United States. It is urged by defendants that the judgment in that case is res adjudicata, but that, whether conclusive as an adjudication or not, the decision of the Federal court should be followed here.

We agree that that decision should be followed so far as it is applicable here, and we shall follow it as to all legal questions which were there determined, but we do not agree that the judgment in the case is res adjudicata. We are clear that the issues were so different that many of the essential questions at issue here were not there determined and were not before the court. The character of that action is made clear by the language used by the Supreme Court, in deciding the case, McKenna, J., said [227 U. S. 38]:

"This is not an action for malicious prosecution. It is an action under the Sherman Anti-Trust Act[1] for the violation of the provisions of that act, seeking treble damages    *   *   *.   The foundation of the complaint is that the defendants entered into a contract or combination in restraint of trade which caused damage to plaintiffs  *   *   *.  It was in this aspect that the case was tried," and [at page 24] "To justify a recovery,   *   *   *   injury must result from something forbidden or made unlawful by the act   *   *   *. The circuit court and the circuit court of appeals both decided that the damages which plaintiffs alleged they sustained were not a consequence of a violation by defendants of the provisions of the Sherman Anti-Trust Act. Both courts assumed, for the purpose of their

[1] [26 St. 209, c. 647, U. S. Comp. St. 1901, p. 3200.]

decision, that the contract of February 24, 1898, between the Creamery Package Manufacturing Company and the other manufacturers and sellers of churns and butter workers was a combination in restraint of trade, but both courts held that the Owatonna Company was not a party to it nor became associated subsequently in its scheme."

There is not in the case at bar any claim of violation of the Sherman Act. There is, in the pleadings, a claim of violation of the anti-trust act of this state, which is somewhat similar to the Sherman Act, but, as we have already seen, this claim was eliminated by the trial court.

16. There is still undetermined the question of common-law liability for malicious interference with the business of plaintiffs by misrepresentation, threats and malicious prosecution. This is a distinct and separate cause of action. The gist of the cause of action tried in the Federal courts under the Federal act was, "that the defendants entered into a contract or combination in restraint of trade which caused damage to plaintiffs." 227 U. S. 8, 38, 33 Sup. Ct. 202, 57 L. ed. 407. Combination in restraint of trade is not the gist of the common-law action of interference with business or of malicious prosecution.

Conspiracy and combination in restraint of trade are here alleged, but this allegation is of no importance, so far as respects the common-law causes and ground of action. Where an action in tort is brought against two or more, it is necessary, in order to recover against all of them, to prove concurrent acts of all. For this purpose, it may be important to establish the allegation of conspiracy or combination. But this is no part of the cause of action. If it turn out on the trial that only one was concerned, the plaintiff may still recover, the same as if such one had been sued alone. The conspiracy or combination is nothing, so far as sustaining the action goes; the foundation of it being the actual damage done to the party. Hutchins v. Hutchins, 7 Hill, 104; see also Cressy v. Republic Creosoting Co. 108 Minn. 349, 122 N. W. 484; Martin v. Leslie, 93 Ill. App. 56.

17. A joint tort is here alleged, but it seems hardly necessary to

say that there may be a joint tort of this sort, without the existence of any conspiracy or combination in restraint of trade. Flaherty v. Minneapolis & St. L. Ry. Co. 39 Minn. 328, 40 N. W. 160, 1 L.R.A. 680, 12 Am. St. 654; Fortmeyer v. National Biscuit Co. 116 Minn. 158, 133 N. W. 461, 37 L.R.A.(N.S.) 569; Cooley, Torts, *145, *156, *166; Mack v. Kelsey, 61 Vt. 399, 17 Atl. 780; Bath v. Metcalf, 145 Mass. 274, 14 N. E. 133, 1 Am. St. 455; Drake v. Stewart, 76 Fed. 140, 22 C. C. A. 104.

18. It will, of course, be observed that the false representations, which in part form the basis of this action, were all made by officers or agents of the Creamery Package Manufacturing Company, and that the malicious prosecution, which in part forms the basis of the action, was in a suit to which the Owatonna Manufacturing Company alone was a party. We are of the opinion that the evidence which we have above detailed, together with other circumstances of less importance disclosed by the evidence, is sufficient to go to the jury upon the question of liability of both defendants for both classes of acts, under the rule which is well recognized that all who actively participate in any manner in the commission of a tort, or who procure, command, direct, advise, encourage, aid, or abet its commission, or who ratify it after it is done, are jointly and severally liable therefor, Cooley, Torts, *166, Mack v. Kelsey, 61 Vt. 399, 401, 402, 17 Atl. 780, even though they act independently and without concert of action or common purpose, provided their several acts concur in tending to produce one resulting event. Flaherty v. Minneapolis & St. L. Ry. Co. supra, Mayberry v. Northern Pacific Ry. Co. 100 Minn. 79, 110 N. W. 356, 12 L.R.A.(N.S.) 675, 10 Ann. Cas. 754; Fortmeyer v. National Biscuit Co. 116 Minn. 158, 133 N. W. 461; see also Sloggy v. Dilworth, 38 Minn. 179, 36 N. W. 451, 8 Am. St. 656.

We have already indicated that there must be a new trial, because of submission of the claim of malicious prosecution of the infringement suit instituted in the name of the Creamery Package Manufacturing Company, and because the evidence is insufficient as to want of probable cause for prosecution of the suit instituted in the name of the Owatonna Manufacturing Company. There were other substantial errors in the case.

19. The jury assessed plaintiffs' damages in the sum of $57,500. The damages are, under the evidence in the case, grossly excessive. They cannot be sustained under any possible theory of the evidence.

These plaintiffs owned some patents, but there is no evidence that their commercial value has been destroyed, or as to the extent to which they have been injured.

Plaintiffs owned a valuable plant in which they started to manufacture these machines, but there is no evidence as to the extent to which it was devoted to this purpose, and none as to the amount this property was damaged by the alleged interference with the business of manufacturing churns.

There is evidence that plaintiff Virtue expended considerable time in connection with the defense of the patent infringement suit. The evidence is very vague and unsatisfactory as to the necessity of such expenditure of time, and there is no evidence as to the value of his time.

There is evidence that plaintiffs expended considerable sums of money in defending that suit. The evidence is very vague and unsatisfactory as to the necessity of many of these expenditures.

There is evidence that the business of plaintiffs was injured, but the total sales of that business from beginning to end were less than $8,000, and the total profits less than $3,000. The damages for injury to this business naturally could not be large. Plaintiffs make no claim on account of special damage for loss of profits from prospective sales. They claim general damages for injury to the business, its reputation, standing and good will.

Damages must be proven with reasonable certainty. They cannot be based on speculation or conjecture.

In order to recover damages for injury to real or personal property, there must be fair proof that such damage has occurred and of the amount thereof, and that it was caused by the wrong of defendants.

In order to recover for expenditure of time, there must be proof of the necessity of such expenditure of time and of the value thereof. Forster v. Columbia Nat. Bank, 77 Minn. 119, 79 N. W. 605. In

order to recover for expenditure of money, there must be proof of the necessity of such expenditure.

Damages for injury to plaintiffs' business, its reputation, standing and good will, may, upon proper proof, be recovered. Hansen Mercantile Co. v. Wyman, Partridge & Co. 105 Minn. 491, 495, 117 N. W. 926, 21 L.R.A.(N.S.) 727; Johnson v. Wild Rice Boom Co. 118 Minn. 24, 136 N. W. 262, 13 Cyc. 57. In such a case the jury should always be cautioned against allowance of damages that are speculative and conjectural. At the same time, if it is certain that damages have been caused by the wrongful act of another, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever. Wakeman v. The Wheeler & Wilson Mfg. Co. 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Burckhardt v. Burckhardt, 42 Oh. St. 474, 51 Am. Rep. 842; Emerson v. Pacific Coast & Norway Packing Co. 96 Minn. 1, 8, 104 N. W. 573, 1 L.R.A.(N.S.) 445, 113 Am. St. 603, 6 Ann. Cas. 973. The jury may, in such case, give such temperate damages for injury to business as they believe to be reasonable compensation for the injury which must necessarily result from the act of the defendant. Peabody v. Citizens State Bank, 98 Minn. 302, 310, 108 N. W. 272.

20. The evidence on most of the points mentioned is so vague and uncertain that it furnishes no satisfactory basis for the assessment of any large amount of compensatory damages. Taking these facts into account and making due allowance for the discretionary power of the jury to assess punitive damages, it must still be held that the damages in this case were so excessive as to make it appear that they were given under the influence of passion or prejudice. See Peterson v. Western Union Telegraph Co. 65 Minn. 18, 67 N. W. 646, 33 L.R.A. 302; Bathke v. Krassin, 78 Minn. 272, 80 N. W. 950.

A number of exceptions were taken to rulings upon evidence.

21. Plaintiffs introduced in evidence, over objection, a series of contracts between defendants, the first one April 19, 1897, and the last June 4, 1898. In the Federal court, it was distinctly held that none of these contracts, nor all of them together, furnished any basis for an action. It was proper to receive the last contract of June 4,

1898, for the purpose of showing the relation between these defendants at the time of the transaction complained of herein, but no useful purpose can be subserved by incumbering the record with the earlier ones, and they should be excluded.

22. The evidence as to the prices at which *Disbrow* and *Victor* churns were sold and the profits made from them, was inadmissible. It had no bearing on any aspect of the case. The same is true as to testimony that plaintiffs did not intend to infringe on any patent of defendant and believed they were not doing so.

23. Plaintiffs' exhibit "HH" was not admissible in evidence. It was a copy made of a writing that was not shown to have emanated in any manner from either of defendants. For manifest reasons it should have been rejected.

24. The record of a former suit for malicious prosecution against the defendant Owatonna Manufacturing Company was properly excluded. That action was dismissed. The record was accordingly not an adjudication. This proposition has long since been settled. Craver v. Christian, 34 Minn. 397, 26 N. W. 8; Andrews v. School District, 35 Minn. 70, 27 N. W. 303.

25. The record in the Federal suit was properly excluded. It was a litigation upon a different cause of action, and the record was not therefore an estoppel. It is contended that the bringing of that suit was an election of remedies as between that course of action and the course pursued here, and that this suit cannot therefore be maintained. There can be no election between causes of action, unless two causes of action exist and they are inconsistent. In re Van Norman, 41 Minn. 494, 43 N. W. 334. Here the alleged cause of action sued on in the Federal courts did not exist at all.

Exception is taken to some portions of the charge.

26. The court instructed the jury, "if your verdict is against the defendants it is a verdict against both of them  *  *  *  ; there can be no separation of the case of joint tort feasors where an action is brought against them,  *  *  *  so your verdict in this case will be for the plaintiff against both of them jointly, or your verdict will be in favor of both of them." This was error. The principle that, where two persons are sued jointly in tort, the plaintiff may prevail against

one, though he fails to prove a joint tort, is so well settled that citation of authority is not necessary. See Hutchins v. Hutchins, 7 Hill, 104, supra.

The court further instructed the jury: "The only question for you to determine is whether or not there was a conspiracy or combination between these two defendants to injure these plaintiffs." This was error for reasons which we have above endeavored to make clear. Hutchins v. Hutchins, 7 Hill, 104, supra.

27. A mass of evidence was received, devoted to proof in much detail of the methods pursued by the Creamery Package Manufacturing Company in ridding itself of other competitors. The trial was begun with the introduction of hundreds of pages of evidence of this sort. All of this evidence was collateral to the issues in this case. This court will exercise great liberality in sustaining a trial court in its exercise of discretion in receiving evidence of collateral facts. Very often such facts are of great probative value. Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554; Dalby v. Lauritzen, 98 Minn. 75, 107 N. W. 826; Humphrey v. Monida & Y. S. Co. 115 Minn. 18, 131 N. W. 498. But the reception of such evidence must not be carried to such an extent as to overshadow the real issue in the case, and we believe this was just the result accomplished here. Kanne v. Kanne, 119 Minn. 265, 270, 138 N. W. 25; Bemis v. Temple, 162 Mass. 342, 38 N. E. 970, 26 L.R.A. 254.

A brief reference to these matters might have been permitted within the discretion of the trial court to show the situation of the parties and to shed light on the controversies in the case. The fact that the defendant Creamery Package Manufacturing Company was a combination; that it pursued generally in its business methods not justified by the laws of fair competition, but calculated only to ruin competitors, as by bidding at ruinous prices when competition appeared, may throw some light on the probable truth of the testimony as to the conduct of this defendant toward plaintiff; but we are convinced that the greater part of this collateral evidence, such as the mass of detail as to the property of competitors taken over, the amount of the inventories, the price allowed, the details of defendant's method of operating its business, such as the use of names of its former com-

petitors and keeping up a semblance of competition, and many other items of evidence still more remote which fill the record, could only tend to confuse the issues of the case, and should have been excluded. In justice to the trial court, it should be said that a great deal of this evidence was received without objection, but much of it was received over objection.

28. It is contended that the charge of the court as a whole gave the jury no sufficient guidance in deliberating on a complex case, and failed to define or outline the issues of fact which the jury were called upon to decide. We deem this contention well taken. The charge begins with instructions on the subject of punitive damages. The court withdrew from the jury plaintiffs' claim of recovery by reason of alleged violation of the state and Federal laws relating to contracts in restraint of trade, but still there follows a long discussion of the proper construction of those laws. The charge furnished little guidance as to the facts necessary to warrant a recovery or as to the measure or the elements of damages. The issues are easily defined. If defendants, or either of them, by false representations as to infringement of a patent which was in fact void, or by threats of ungrounded prosecution for infringement, or by malicious prosecution of a suit for infringement, caused injury to plaintiffs, they are liable therefor. The facts necessary to be proved to establish malicious prosecution of such infringement suit, and the proof that is necessary to sustain a recovery of the various items of damages claimed, are hereinbefore fully stated. The charge omitted so many essential things that we feel bound to hold that it is subject to the rule of Greengard v. Burton, 88 Minn. 252, 92 N. W. 931.

For reasons above stated the order denying a new trial should be reversed and a new trial granted.

The following opinion was filed on October 31, 1913:

PER CURIAM.

It is urged on motion by defendant Creamery Package Manufacturing Company for reargument that the rule stated in the opinion that "a void patent affords no protection against positive repre-

sentations" of infringement (par. 1), and that "if his patent be void so that he has, in fact, no patent at all, he will not be permitted to make representations of infringement to the injury of another" (par. 4), are incorrect; that so far as such matters are concerned, this action is in substance an action for slander of title, and that "a person interested in property is privileged to assert his rights at any time, even though it transpires afterwards that his claims are unfounded."

The principles applicable to slander of title do apply, and malice is essential to a cause of action based on such statements. "If the publication is false and is made by one having no interest in the subject-matter, malice may be presumed." Swan v. Tappan, 5 Cush. 104; Andrew v. Beshler, 45 N. J. L. 167. But if the publication be an assertion of right or interest by one who in good faith claims such right or interest, then it is privileged, and the presumption of malice is overcome. The law applicable to such communications when privileged was not discussed in the original opinion. The view of the majority of the court is as follows:

Such communications, when privileged at all, are only qualifiedly privileged. Swan v. Tappan, 5 Cush. 104; Andrew v. Deshler, 45 N. J. L. 167; John W. Lovell Co. v. Houghton, 116 N. Y. 520, 22 N. E. 1066, 6 L.R.A. 363. Absolute privilege exists only where the public service or the due administration of justice requires that a person should speak his mind freely. 25 Cyc. 376; Young v. Lindstrom, 115 Ill. App. 239.

The rules governing communications qualifiedly privileged are the same in slander of title as in ordinary libel and slander. John W. Lovell Co. v. Houghton, 116 N. Y. 520, 22 N. E. 1066, 6 L.R.A. 363. The law is that, "a communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself * * * . Actual malice must be proved * * * ." Hebner v. Great Northern Ry. Co. 78 Minn. 289, 292, 80 N. W. 1128, 79 Am. St. 387. The occasion loses its privilege if the statement is in fact false, and knowledge of the falsity is brought home to the person mak-

ing it, or if the statement is made without knowledge of its falsity, but is made with malice and for an ulterior purpose. Lowry v. Vedder, 40 Minn. 475, 42 N. W. 542; Hebner v. Great Northern Ry. Co. 78 Minn. 209, 80 N. W. 1128, 79 Am. St. 387; Andrew v. Deshler, 45 N. J. L. 167; Swan v. Tappan, 5 Cush. 104; Gattis v. Kilgo, 128 N. C. 402, 405, 38 S. E. 931; Hill v. Ward, 13 Ala. 310.

These rules apply to representations made by a person claiming under a patent. Halsey v. Brotherhood, 19 Ch. Div. 386, 389; John W. Lovell Co. v. Houghton, 116 N. Y. 520, 22 N. E. 1066, 6 L.R.A. 363.

Undoubtedly "the owner of a patent is acting within his rights in notifying infringers of his claims and threatening them with litigation * * * , if he does so in good faith, believing his claims to be valid, and in an honest effort to protect them from invasion," Adriance, Platt & Co. v. National Harrow Co. 121 Fed. 827, 58 C. C. A. 163, and he will not be liable therefor even though his patent fails. But if the intent be, not to protect and maintain his own rights, but, under color and pretense of that object, to destroy the complainant's business, in advance of any adjudication of the question of right, a very different case is presented. Lewin v. Welsbach Light Co. 81 Fed. 904, 906. If it be made to appear that the patentee is "pursuing a course which is calculated to unnecessarily injure another's business, and with the plain intention of so doing, his conduct will be deemed malicious," and if his patent fails so that his representations are false, they are actionable. Kohlsatt, J., in Racine Paper Goods Co. v. Dittgen, 171 Fed. 631, 633; followed by Geiger, J., in United Electric Co. v. Creamery Package Manufacturing Co. 203 Fed. 53. See also A. B. Farquhar Co. v. National Harrow Co. 102 Fed. 714, 42 C. C. A. 602, 49 L.R.A. 755.

The evidence produced on another trial should be considered in the light of the views here expressed.

Motion for reargument denied.