EDWARD TORSKE v. COMMONWEALTH LUMBER COMPANY.[1]

May 24, 1902.

Nos. 12,974—(101).

### Personal Injury.

While bracing his foot against the end piece of a molding machine for the purpose of pulling a board out of it, plaintiff was injured by having his toes caught by the revolving knives of the machine. Evidence examined, and *held*:

### Contributory Negligence.

1. That he was not, as a matter of law, guilty of contributory negligence.

### Bracing Foot against Molding Machine.

2. Whether or not it was negligence to brace the foot against the machine in such a position as to come in contact with the knives was a question for the jury, considering the age and experience of plaintiff.

### Negligence a Question for the Jury.

3. Defendant was not guilty of negligence by its mere failure to guard the knives in the machine at the point where plaintiff was hurt, but, when considered in connection with the manner in which the molder operated, the duties of plaintiff, his age, and lack of experience, it was a question for the jury to determine whether defendant was guilty of negligence in failing to warn plaintiff of the danger in working around the machine.

### Double Meaning of Charge to Jury—Duty of Counsel.

4. Where the instructions of a court are susceptible of two possible constructions, an exception will not be deemed to have been taken by virtue of Laws 1901, c. 113, but in such case it is the duty of counsel to direct the court's attention to the possible misinterpretation, in order that it may make the necessary correction.

### Verdict Reduced.

5. Verdict of $2,500 *held* to be excessive, and is reduced to $1,500; otherwise the order appealed from is affirmed.

Action in the district court for Becker county to recover $5,050 for personal injuries. The case was tried before Baxter, J., and a

[1] Reported in 90 N. W. 532.

jury, which rendered a verdict in favor of plaintiff for $2,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed on conditions.

*Morton Barrows*, for appellant.

*H. Steenerson* and *Charles Loring*, for respondent.

LEWIS, J.

Action for personal injuries. Plaintiff, a boy fifteen and a half years of age, was employed by the defendant company, and directed to stand in the rear of a molding machine to sandpaper and trim off the moldings coming through it, with a general direction to assist the boy whose duty at that time it was to feed the molder. The molding machine consisted of a series of knives, which revolved upon a cylinder from underneath the table, planing off the boards pushed through the machine by rollers upon the lower side to the desired form and thickness, thus shaping them into moldings. The cylinder upon which the knives were fastened was perhaps eight inches in diameter, and in revolving reached some seven or eight inches below the top of the table. The end of the machine was so constructed that a person standing opposite to it could not see the knives, since they revolved behind that part of the framework known as the "tail piece," nearly three feet from the floor, but behind the so-called "tail piece" there was an unprotected opening which made contact with the knives possible by placing the hand or foot underneath it. While it does not definitely appear that the machine, as a whole, was defective, or particularly out of order, nevertheless the trial successfully established the fact that when the lumber from which these molding boards were made happened to be of irregular shape, cross-grained, or damp, it frequently stuck in passing through the machine, and on such occasions the boy at the head of the machine putting in the boards was in the habit of pushing them through, and, if this failed, of going around to the end of the machine and pulling them out.

On the day in question the feeder had started a board on its progress through the machine, and it stuck about midway, so

that the ends projected beyond the molder upon both sides. Observing the condition of the board, plaintiff left the work he was doing, and went over to help the boy at the head of the machine push the board through, but, being unable to accomplish it, he went to the end of the machine, and tried to pull it out; but the board still resisted his efforts, and, in order to apply greater force, he braced his foot against the frame of the machine behind the tail piece, and in doing so pushed it so far up into the machine that the revolving knives caught his toes, causing the injuries complained of. The questions calling for consideration are: First. Was the plaintiff guilty of contributory negligence? Second. Was the defendant guilty of negligence in that it had not properly guarded the knives, and in failing to warn plaintiff of the danger? Third. Error of the court in instructing the jury. Fourth. Was the verdict excessive?

1. The plaintiff was not guilty of contributory negligence as a matter of law. He was a lad about fifteen years of age, born in a foreign country, and had been in America only one year prior to his employment. He had never worked in a sawmill, or around machinery of that character, before, and had no special knowledge, by experience or otherwise, of the dangers attending his duties. The sticking of the boards in their passage through the machine was not an unusual occurrence, and pulling them out by bracing the foot against the machine had been practiced by other employees, although plaintiff was unaware of that fact. There is reasonable ground for claiming that a person of plaintiff's age, knowledge, and experience might be expected, in his endeavor to pull out a board, to place his foot against the framework of the machine in order to get a better purchase. While a cautious person, or one with experience, would probably not voluntarily put his foot against the machine without taking care that the foot was safely placed, yet plaintiff's age and lack of experience, together with the work he was required to do, were all matters for the jury's consideration in determining whether he exercised ordinary care and caution.

2. The machine was of the standard make, and, when operated under usual circumstances, an injury of this character would not

be likely to occur, and the proprietor should not be held to anticipate such an occurrence from the mere fact that the knives were unguarded at that particular point where plaintiff placed his foot. But the feeding attachment was so arranged that it did not readily accommodate itself to irregular and swollen lumber,—whether from inherent defects or otherwise does not appear,—and this fact was well known to the manager of the mill. Several of the employees testified that it had been their habit to pull boards out of the machine, and in doing so to brace the foot against its frame; and while, from the evidence, it does not appear that this fact had been brought to the manager's knowledge, yet the general condition had existed for so long a time that defendant must be presumed to have known of the method resorted to in overcoming the difficulty. Therefore, although the machine, in itself, may not have been defective in not being guarded at that particular point, yet when defendant employed the plaintiff, and put him to work near the machine, with the expectation that he would assist the young man who was sending the boards through it, and knowing his age and inexperience, it is an open question whether, under those circumstances, defendant should not have been required to anticipate that the boy might not inadvertently place his foot too far above the cross-piece of the frame, and so come in contact with the revolving knives. Such duty does not appear to have arisen in this case as a matter of law, but it was a question for the determination of the jury under proper instructions.

3. The trial judge, after a preliminary statement with reference to the case, gave to the jury, with others, the following instruction:

"And this brings you to the real question in this case,—the first important question,—and that is whether Mr. Peterson, in the manner in which he set this boy to work in the position which he gave him, as is shown by the testimony in connection with his employment and his work there, was negligent in not giving him proper instructions and explanations in regard to the machinery that he (plaintiff) was to work at, and whether, through such negligence, this boy was led to place his foot where it was injured. If you find such to be the case, then that would be an act of carelessness on the part of the defendant, and in passing upon this

question you should take into consideration the age and experience of the boy."

He then called attention to the evidence applicable to the instruction, and added:

*"Now if you are satisfied from all the testimony upon this point that this young man from his want of knowledge of that machinery, while in the discharge of the duties which he had undertaken to perform, was injured, and that he received no instructions from any one representing the defendent as to this machinery and its use, then I say you would be justified in finding negligence on the part of this defendant, and it is in that that the negligence consists, if in anything."*

The giving of that part of the charge we have italicized is here assigned as error on the ground that it is a distinct instruction to the jury that, if they should find the plaintiff received no instructions respecting the machinery, then such failure to warn plaintiff would constitute negligence on the part of defendant. We are of the opinion that, whether the instruction standing alone is susceptible of such construction or not, the charge as a whole is a fair and correct statement of the law applicable to the issues. The trial court clearly and correctly stated the law as to the real question in the case; then, after directing the attention of the jury to the evidence bearing upon it, attempted a recapitulation of the correct legal proposition already given, but in doing so failed, by inadvertence, to clearly restate it with strict legal accuracy. This mistake could have been readily corrected, and undoubtedly would have been, if the trial court's attention had been called to it. This brings the case within the rule that, if the charge of the court, as a whole, is correct, the omission of a necessary qualification in a statement of the law, which has previously been stated clearly and accurately to the jury, is not reversible error. In such a case, if it is desired to prevent possible misapprehension on the part of the jury from such omission, the attention of the court should be specially called to the omission. Peterson v. Chicago, M. & St. P. Ry. Co., 38 Minn. 511, 39 N. W. 485; McKnight v. Chicago, M. & St. P. Ry. Co., 44 Minn. 141, 46 N. W. 294. Laws 1901, c. 113, dispensing with the necessity of taking exceptions,

has not abrogated this rule. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754.

4. The injury received by the plaintiff consisted in the loss of the first joint of the second and third toes of the right foot and the severing of the under tendon of the big toe. The wound in the toe was healed, and the balance of the foot was not injured. There was some testimony on the part of the physician called by plaintiff tending to show that by reason of the injury plaintiff might be somewhat deprived of the purchase power of his toes in walking, but the evidence as a whole very clearly establishes the fact that for all practical purposes the plaintiff will not, to any great extent, be deprived of the use of his foot. While the injury was an unfortunate one, it certainly was not of such a serious character as to sustain the verdict returned by the jury. Two thousand five hundred dollars is excessive, but we are not prepared to say that it was so exorbitant as, under all the circumstances, to show that the jury were manifestly prejudiced in coming to their conclusion; but, in our judgment, $1,500 is the utmost that should be allowed to stand, under the circumstances of this case, and the verdict is accordingly reduced to that amount.

In other respects the order appealed from is affirmed.