# CHARLES R. CRESSY v. REPUBLIC CREOSOTING COMPANY and Others.[1]

July 9, 1909.

Nos. 15,996—(13).

**Complaint Sufficient.**

Plaintiff, appointed to inspect creosoted blocks to be furnished by defendant to a city, was alleged to have been assaulted and beaten by defendant's engineer while he was performing his duties on defendant's premises, pursuant to a conspiracy between the master and his servant to make it impossible for plaintiff to fulfil his employment obligations, whereby plaintiff lost his position. A majority of the court is of opinion that the complaint was sufficient to justify a recovery from the master for assaults and assaults and batteries by the servant.

**Liability for Servant's Tort.**

The evidence justified the trial court in submitting five causes of action for assault and assault and battery. The place at which plaintiff worked became "a sort of suppressed volcano," because of quarrels between him and defendant's engineer. Defendant was advised of an assault and of a battery upon plaintiff by the servant. More serious encounters followed. The trial court instructed the jury that the defendant was liable for the wrongful conduct of his servant in the course of his employment and in furtherance

[1] Reported in 122 N. W. 484.

of his master's business, and sustained plaintiff's verdict against the master for the assault of the servant. The conclusion of the trial court is approved.

**Definition of Assault.**

An instruction defining an actionable "assault" as a wrongful threat to do bodily violence to another, with the present ability of the one who threatens to carry such threat into effect, *held* sufficient.

**Omission of Proper Qualification in Charge.**

The omission of a proper qualification of a statement of law in an instruction is not necessarily reversible error, and, if it is desired to prevent possible misapprehension by the jury because of such omission, the trial court's attention should be specially called to the matter.

Action in the district court for Hennepin county against defendant corporation, A. W. Van Hafften and John Gilmore, to recover $10,000 for assaults and batteries accompanied by abuse and maltreatment, during the employment of plaintiff by the city of Minneapolis as inspector of creosoted paving blocks. The allegations of the complaint alleging a conspiracy were as follows:

"10. That in order to cheat and defraud the said city of Minneapolis and to prevent a true and proper inspection by plaintiff, as such inspector of the paving materials aforesaid, to be by said defendant Republic Creosoting Company delivered to the said city of Minneapolis under the said contract, the said defendants conspired together to enter upon a course of maltreatment, insult, vilification, harassment and personal violence of this plaintiff, in order to discourage, discredit, intimidate and ultimately by violence and personal bodily injury to wholly prevent this plaintiff from entering upon or remaining in and about the said plant of the defendant Republic Creosoting Company and performing the duties required of this plaintiff in connection with his said employment, as inspector of paving materials aforesaid.

"11. That so contriving and maliciously intending to injure plaintiff, the said defendants Republic Creosoting Company and Alexander Van Hafften caused and procured the said defendant John Gilmore to maliciously and wilfully assault and beat this plaintiff, and that the said defendant Gilmore did wilfully, maliciously and wantonly, and with the intent to do plaintiff great bodily harm and

cause him mental anguish, attack, assault and beat the plaintiff on the date and under circumstances more particularly set forth as follows, to wit:" enumerating five specific assaults.

The case was tried before Holt, J., and a jury which returned a verdict in favor of plaintiff for $600. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, in which the court reduced the verdict to $200, for the reason that the evidence did not warrant punitive damages,—the amount of $400 having been included in the verdict as punitive damages—the defendant company appealed. Affirmed.

*A. B. Jackson* and *Geo. W. Armstrong,* for appellant.

*Geo. B. Leonard* and *John P. Devaney,* for respondent.

JAGGARD, J.

Defendant and appellant contracted to deliver to a city certain creosoted paving blocks, subject to test, inspection, and rejection. Plaintiff and respondent was appointed inspector, to see that the creosoting mixture in the treatment tank conformed to contract and that the blocks were properly impregnated. In June defendant's engineer, Gilmore, and its manager, Van Hafften, contended that plaintiff's mode of computation was not fair to the company. This and other matters caused friction between plaintiff and Gilmore. Gilmore claimed that plaintiff was meddlesome, fault-finding, suspicious, and insulting in his demeanor. Plaintiff claimed that Gilmore was violent in his language and hostile and threatening in his conduct and attitude toward him. In the latter part of August, the fireman called Van Hafften to the plant by telephone, because Gilmore threatened to quit, saying that he "wouldn't stand for [plaintiff's] abuse and work there." Van Hafften told both Gilmore and plaintiff that "they would have to come together and agree, some way, as they couldn't interrupt the business." On September 10 plaintiff and Gilmore came to blows. Each struck the other with iron pipe. According to the plaintiff, whose version for present purposes must be accepted, Gilmore was the aggressor and struck the first blow. Later in the day plaintiff returned with a friend. Gilmore "grabbed hold" of his friend; Gilmore's son, of plaintiff. On being informed of the affair, Van Hafften established a modus vi-

dendi, or laid down the regulation that plaintiff and Gilmore should not be inside the retort house together without the presence of a third person. About September 20 plaintiff visited the plant with another student and wished to enter the retort house, for the purpose, he says, of gauging the drip tank, and Gilmore refused him admission, whereupon the two young men went to the rear door, which Gilmore says was nailed up. They opened the door, and Gilmore appeared with a monkey wrench in his hand, which he held in a threatening manner and told Cressy he could not come in. The place became "a sort of suppressed volcano." Finally an encounter took place in which "guns" figured freely. Gilmore struck plaintiff with his pistol, one blow on the head, and another on his raised hand, "to get even on old scores, more than anything else, personally."

Plaintiff then sued defendant company, its general manager, Van Hafften, and Gilmore. The jury returned a verdict of $600 against defendant company and Gilmore. This the court reduced to $200. Defendant company alone appeals.

1. The trial court held as a matter of law that there was no liability because of a conspiracy to injure plaintiff in his employment. It expressed "great doubt about the complaint being sufficient for assault and battery." The majority of the court have concluded not to disturb the determination of the trial court that the verdict should be taken, and, when rendered, should stand. The complaint fully alleged the assaults, and the assaults and batteries. The defendant interposed a full defense. The questions were fully litigated upon their merits. No suggestion has been made that any evidence was introduced which could not have been introduced if the action had been simply in trespass vi et armis. Every presumption is in favor of the verdict. The objection is technical.

It conforms to the spirit of correct pleading, and conduces to the end of litigation, to disregard·the allegations of conspiracy, in so far as they exceed a charge that the master personally joined in the wrongdoing of defendant's servant; that is, in order to make the master liable, plaintiff must have alleged and shown either or both the following facts, namely: (1) That the master was an actual participant in the wrong to the plaintiff; (2) that for the conduct

of his servant the master was liable, within the rules of law on that subject, although not taking part personally in his servant's wrong-doing. The allegations as to conspiracy tended to show that the master was responsible for the servant's conduct because of his personal wrong, not merely because of the relationship in force between him and his servant.

From this conclusion the writer of this opinion and Elliott, J., dissent.

The system of pleading is not to be worshipped as a fetich. . A lawsuit is designed to determine the substantial merits of the controversy, and not merely to observe the requirements of artificial rules of procedure. None the less it is possible to go too far in abolishing orderly procedure by means of recognized forms of pleading. See Miner v. Bradley, 22 Pick. 457. While this is a border case, the complaint stated clearly and distinctly a cause of action for conspiracy to maliciously interfere with plaintiff's employment. The allegations of assault must be regarded as mere, but proper, incidents setting forth the means by which the conspiracy was executed. To disregard the allegations of conspiracy does injustice to the language of the complaint, used intentionally and systematically. So to do is at variance with the natural and proper rule that a complaint must proceed upon a definite theory, and the cause must be treated upon the theory constructed by the pleadings, and such a judgment as the theory selected warrants must be rendered, and no other or a different one. 1 Enc. Pl. & Pr. 195. Defendant could not have corrected the pleadings by motions or have prevailed on demurrer. Jones v. Morrison, 31 Minn. 140, at page 143, 16 N. W. 854; Raymond v. Sturges, 23 Conn. 134; Van Horn v. Van Horn, 52 N. J. L. 284, 20 Atl. 485, 10 L. R. A. 184; Bingham v. Lipman, 40 Ore. 363, 67 Pac. 98; Emerick v. Sweeney, 17 S. D. 270, 96 N. W. 93; Oliver v. Perkins, 92 Mich. 304, 52 N. W. 609; Miller v. Bayer, 94 Wis. 123, 68 N. W. 869; Hines v. Whitehead, 124 Iowa, 262, 99 N. W. 1064; Murray v. McGarigle, 69 Wis. 483, 34 N. W. 522; Fisher v. Schuri, 73 Wis. 370, 41 N. W. 527.

2. The court submitted "five causes of action for assaults and assaults and batteries." In three of these instances no personal violence was used. Defendant insists that they were "assaultless as-

108 M.—23.

saults;" for example, as to one of them, "the complaint pictures Gil-, more as standing for nine days with the monkey wrench brandished aloft, enlightening plaintiff as to his danger, like the torch of Liberty on Bedloe's Island, or the flaming sword which kept Adam out of the garden of Eden." An examination of the record, however, has satisfied us the plaintiff sufficiently proved an assault.

The charge of the trial court in this respect was not as complete as it might properly have been. The learned trial judge defined an actionable assault to the jury in these words: "By an assault is understood in law a wrongful threat to do bodily violence to another, and with the present ability of the one who threatens to carry such threat into effect." Defendant insists that this definition omits the very essential element of "actual intention on the defendant's part to carry the threat into effect," or "the putting in motion such physical force as to create a well-founded apprehension of physical injury." 3 Cyc. 1020–1026, and cases cited.

This definition was, however, as full as many statements which have received judicial sanction. See 1 Words & Phrases, 532. Cf. 3 Cyc. 1020–1026. So far as the charge went, it was undoubtedly correct. The omission of a proper qualification in a statement of law is not necessarily reversible error. In such a case, if it is desired to prevent possible misapprehension on the part of the jury from such omission, the attention of the court should be specially called to the matter. See Torske v. Commonwealth Lumber Co., 86 Minn. 276, 278, 90 N. W. 532. This defendant here did not do.

3. The question then arises whether the defendant master was liable for the wrongs of his servant. We are of opinion that there was no error in the action of the trial court on this point, nor in refusing to disturb the finding of the jury pursuant to the charge of the court. The trial court charged that a verdict could be rendered for the servant's wrongdoing by virtue of the relationship only in case Gilmore's wrongdoings were in the line of the servant's duty and the scope of the servant's employment. Subsequently it submitted the question whether Gilmore's actions were in furtherance of his master's business. After enumerating what the jury should consider in that connection, the court added: "This includes not only such scope as his employment originally was, but also within such

scope as you may find from the evidence it was extended by reason of acquiescence, of what Gilmore was doing after knowledge thereof by * * * the manager." The finding of the jury was therefore to the effect that Gilmore's wrongdoing was in the furtherance of his master's business. The case, therefore, on the jurisdiction, does not come within the dictum in Merrill v. Coates, 101 Minn. 43, 111 N. W. 836, that if the assault was a purely personal quarrel, and not in the furtherance of defendant's interests, plaintiff is not entitled to recover, but is within the rule laid down in that case. This consideration also differentiates Johanson v. Pioneer Fuel Co., 72 Minn. 405, 408, 75 N. W. 719, in which the court held as a matter of law that assault was as a matter of law "purely a personal matter" between plaintiff and defendant. In the case at bar the court construed, not merely the allegation of the complaint, but the testimony offered, that the wrong was within the scope of defendant's employment.

This conclusion is the more easily reached in view of the testimony tending to show knowledge of the defendant company of danger to the plaintiff from violence by its servant. The authorities generally have liberally defined the rights of persons lawfully upon the premises of another, and have strictly enforced the duty of the owner of premises to protect such persons from avoidable harm. More specifically have they held such owner or proprietor responsible in damages for the infringement of such rights and the violation of such duties by servants on the premises, alike whether the servant acted wilfully, maliciously, or negligently, and often when in no natural sense of the words was the misconduct of the servant for the master's benefit or in furtherance of the master's business. A fortiori this rule applies where the master has notice of proclivity of his servants to do harm. This has been applied in cases of storekeepers (Mallach v. Ridley, 24 Abb. N. C. 172, 9 N. Y. Supp. 922; Swinarton v. Le Boutillier, 31 Abb. N. C. 281, 28 N. Y. Supp. 53, affirmed 148 N. Y. 752, 43 N. E. 990; Geraty v. Stern, 30 Hun, 426; McDonald v. Franchere Bros., 102 Iowa, 496, 71 N. W. 427); railroad stations (Dean v. St. Paul Union Depot Co., 41 Minn. 360, 43 N. W. 54, 5 L. R. A. 442, 16 Am. St. 703; Indianapolis v. Cooper, 6 Ind. App. 202, 33 N. E. 219; Houston v. Phillio, 96 Tex. 18, 69 S. W. 994, 59 L. R. A. 392, 97 Am. St. 868; 3 Col. Law Rev.

115; Christian v. Columbus, 90 Ga. 124, 15 S. E. 701); saloon keepers (Brazil v. Peterson, 44 Minn. 212, 46 N. W. 331; and see Tway v. Salvin, 109 App. Div. 288, 95 N. Y. Supp. 653; Bergman v. Hendrickson, 106 Wis. 434, 82 N. W. 304, 80 Am. St. 47); restaurant keepers (Goodwin v. Greenwood, 16 Okl. 489, 85 Pac. 1115; Rahmel v. Lehndorff, 142 Cal. 681, 76 Pac. 659, 65 L. R. A. 88, 100 Am. St. 154; Wade v. Thayer, 40 Cal. 578); proprietors of theaters (Drew v. Peer, 93 Pa. St. 234; but see, contra, Cobb v. Simon, 119 Wis. 597, 97 N. W. 276, 100 Am. St. 909; Fairbanks v. Boston, 189 Mass. 419, 75 N. E. 737, 13 L. R. A. [N. S.] 422, 109 Am. St. 646).

That the master may be held responsible to licensees upon his premises for the wrong of an independent contractor, see Corrigan v. Elsinger, 81 Minn. 42, 47, 83 N. W. 492 (store), or of a stranger, see Curran v. Olson, 88 Minn. 307, 92 N. W. 1124, 60 L. R. A. 733, 97 Am. St. 517 (saloon), and Rommel v. Schambacher, 120 Pa. St. 579, 11 Atl. 779, 6 Am. St. 732 (same). That the master may also be held responsible for an assault by a servant on a mere trespasser, see Schmidt v. Vanderveer, 110 App. Div. 758, 97 N. Y. Supp. 441.

We have examined and considered the other assignments of error, and find none which justifies either discussion or reversal of the order appealed from.

Affirmed.