## WILLIAM W. WRABEK v. THOMAS SUCHOMEL AND OTHERS.[1]

### May 14, 1920.

### No. 21,563.

**Jury — selection of special venire — objection taken too late.**

1. In selecting jurors summoned on a special venire, section 7971, G. S. 1917 Supp. was disregarded, but there was no objection until after the return of the verdict. *Held*, that by failing to make timely objection the plaintiff waived any right he may have had to insist that the jurors be selected as provided by the statute.

**Cross-examination of witness.**

2. The rule that the cross-examination should be confined to facts to which the witness testified on direct examination is not absolute. The latitude to be allowed is largely within the discretion of the trial court. There was no prejudicial error in permitting cross-examination of plaintiff's wife upon matters not gone into on her examination in chief.

**Pleading — general denial — reputation of plaintiff in issue.**

3. The complaint alleged that, in addition to inflicting injuries upon his person by an assault, defendants intended to injure and by the publicity of the assault did injure plaintiff's standing and reputation as a citizen in the community where he lived. The general denial in the answers puts plaintiff's reputation as a citizen in issue and entitled defendants to show, in mitigation of damages, that it was bad.

**New trial because of misconduct of counsel.**

4. The granting of a new trial for misconduct of counsel in summing

[1] Reported in 177 N. W. 764.

up before the jury, is largely within the discretion of the trial court. Its action will not be reversed except for an abuse of such discretion.

**Evidence of conspiracy insufficient.**

5. The evidence of an alleged conspiracy among the defendants to commit an assault upon plaintiff was not sufficient to require the court to submit that issue to the jury.

**Evidence of self-defense insufficient.**

6. The evidence was insufficient to justify the jury in finding that three of the defendants who admitted that they assaulted plaintiff were acting in self-defense in so doing.

**Damages awarded inadequate.**

7. The uncontradicted evidence as to the nature and extent of plaintiff's injuries caused by the assault, is such as to compel the conclusion that a verdict of one dollar is so inadequate as to indicate that it resulted from passion and prejudice on the part of the jury.

**Liability of defendants for all injuries inflicted.**

8. The fact that persons other than defendants participated in the assault upon plaintiff, and that some of his injuries were received at their hands, does not absolve the defendants from liability for all the injuries inflicted upon him in the course of an affray in which they and such other persons jointly participated.

**Construction of verdict.**

9. Under the court's instructions, by returning a verdict against the particular defendants by whom the assault was found to have been committed, without naming the other defendants, the jury in effect found in favor of the latter defendants.

Action in the district court for Le Sueur county to recover $30,000 for assault. The answer of Suchomel, Kohout and Manz alleged that when the assault occurred Suchomel used no more force than was necessary for the purpose of protecting himself from violence directed upon him by plaintiff and for the purpose of quieting plaintiff and requiring him to stop his derogatory remarks of defendants, and for the purpose of quelling a riot which was likely to have occurred by reason of the conduct of plaintiff. The case was tried before Tifft, J., and a jury which returned a verdict in favor of plaintiff for one dollar. From an order denying his motion for a new trial, plaintiff appealed. Reversed

and remanded for retrial of issues between plaintiff and defendants Suchomel, Kohout and Manz only.

*Thomas Hessian* and *Moonan & Moonan,* for appellant.

*Arthur J. Phil Jelinek, E. W. Komarek, Norman E. Peterson* and *P. W. Morrison,* for respondents.

LEES, C.

Appeal from an order denying a motion for a new trial of a civil action for damages for assault and battery.

On the afternoon of May 25, 1918, a political meeting was held at New Prague in this state, at which Governor Burnquist made an address. Plaintiff, a farmer living nearby, went to the village in the evening to attend a meeting of the Society of Equity. He was a member of the Nonpartisan League and wore one of its buttons. The league favored the nomination for Governor of Charles A. Lindbergh. Plaintiff had displayed a Lindbergh banner on his house and had failed to attend the afternoon meeting. Someone had torn down the banner, and the defendant Suchomel had heard that he was charged with having done it. Early in the evening he encountered plaintiff's wife in front of a store where he was employed and accused her of having said that he had removed the banner. They had an angry altercation and a group of people gathered about them. While they were quarreling, plaintiff came up, took some part in the controversy, and finally led his wife away. He then went to the saloon of one Nicolay, which was under the hall where the Society of Equity had its meetings. A number of members of the society were present waiting for the meeting to begin. Later in the evening Suchomel and his codefendants entered the saloon. Whether they came together or separately is a matter of dispute under the evidence. Soon after they came there was a saloon brawl, in the course of which Suchomel pushed plaintiff away from him and struck him twice; the defendant Manz snatched the league button from plaintiff's coat and threw it on the floor, and the defendant Kohout struck him in the face. The proprietor of the saloon then ordered everybody out. Plaintiff was shoved or dragged through the rear door and into an alley behind the saloon. He testified that as this was being done he was kicked, struck and otherwise ill-treated, that someone proposed that

he be tarred and feathered, and that all the defendants took some part in the assault made upon him. When it was over, he found his coat, money and watch gone, his vest and shirt torn, and his face bleeding. It was proposed that he be made to kiss the American flag. One was produced and he kissed it and said it was his flag, and was then told to go home, which he did. He consulted a doctor the following day, who testified that he had numerous scratches on his head and face and bruises on his body, and that he was of the opinion that he would not be able to do farm work for a week or ten days. The jury returned a verdict in his favor against the defendants Suchomel, Kohout and Manz, for the sum of one dollar. Plaintiff makes 76 assignments of error upon which he seeks to obtain a new trial as to all of the defendants. They have been grouped under seven heads for the purpose of consideration.

1. When the case was called for trial, the court directed that a special venire be issued to the sheriff, commanding him to summon eight jurors from the county at large. In selecting such jurors, the requirements of section 7971, G. S. 1917 Supp. were disregarded. Some of the jurors before whom the case was tried were called upon the special venire. The record does not show that there was any objection to this procedure. We are of the opinion that plaintiff cannot now complain of the manner in which these jurors were called, and that he should have made timely objection to the manner of selecting them, if he did not intend to waive his right to insist upon a compliance with the statute. Steele v. Maloney, 1 Minn. 257 (347); State v. Greenman, 23 Minn. 209; Rollins v. Ames, 2 N. H. 349, 9 Am. Dec. 79; Beals v. Cone, 27 Colo. 473, 83 Am. St. 92.

2. Plaintiff's wife testified, on her direct examination, concerning her husband's injuries only. Her cross-examination took a wide range and hardly touched at all upon matters to which she testified in chief. The rule that cross-examination should be confined to the facts to which the witness testified on his direct examination is not absolute. The latitude to be allowed is largely within the discretion of the trial court. 3 Dunnell, Minn. Dig. §§ 10318, 10348. It would be difficult to sustain the rulings permitting much of the cross-examination to which this witness was subjected, if it appeared that plaintiff's cause was thereby prej-

udiced. Mrs. Wrabek was a good witness, whose testimony was clear and explicit. It put plaintiff's case in a better light than it would have been, if the questions improperly put to her had been unanswered and the inference left with the jury that her answers would have been unfavorable to him. We think there was no prejudicial error in this feature of the case, and that in this respect it differs from State v. Taylor, 144 Minn. 377, 175 N. W. 615, relied on by plaintiff.

3. The complaint alleged that, in addition to inflicting injuries upon plaintiff's person, defendants intended to injure, and, by the publicity of the assault, did injure his standing and reputation as a citizen in the community where he lived. There were general denials in each of the answers.

After introducing all their evidence relating to the assault, defendants called two witnesses who testified that plaintiff's reputation in the community as a law-abiding, peaceable citizen, at the time of the assault, was bad. In overruling his objection to this testimony, the court remarked that the ruling was made in view of the allegations of the complaint to which we have referred. We think the ruling may be sustained on that ground. Plaintiff was seeking to recover damages for an injury to his reputation as a citizen, caused by the publicity attending the assault, as well as damages for bodily injuries. The general denial in the answers put his reputation in issue. Dennis v. Johnson, 47 Minn. 56, 49 N. W. 383; Dodge v. Gilman, 122 Minn. 177, 142 N. W. 147, 47 L.R.A.(N.S.) 1098, Ann. Cas. 1914D, 894; Krulic v. Petcoff, 122 Minn. 517, 142 N. W. 897, Ann. Cas. 1914D, 1056. Defendants were, therefore, entitled to prove his alleged bad reputation as a citizen in mitigation of damages. Nickolay v. Orr, 142 Minn. 346, 172 N. W. 222.

4. In summing up for the defendants, one of their counsel said: "The rules of law should be suspended during the war and * * * Tommy Suchomel should be allowed * * * to make a foot-ball of the plaintiff." Prompt objection was made, and the court instructed the jury to disregard any remarks not supported by the evidence. Counsel then retracted the statement, adding that he wished to withdraw it from the consideration of the jury, but not from the consideration of counsel for plaintiff. The impropriety of the statement was frankly

conceded when the case was argued in this court. It was an improper appeal to passion at a time when it was likely to be effective, but the trial court was in a better position than we are to judge whether its effect with the jury was so serious as to entitle plaintiff to a new trial. It is well settled that the granting of a new trial on this ground is very largely a matter of sound judicial discretion and will not be reversed, except for an abuse of such discretion. 2 Dunnell, Minn. Dig. § 7102; Smith v. Great Northern Ry. Co. 133 Minn. 192, 158 N. W. 46. We cannot say the court abused its discretion.

5. Careful examination of the record satisfied us that there was not sufficient evidence to justify the jury in finding that defendants conspired to assault the plaintiff. The evidence is no stronger than it was in Leibel v. Golden, 138 Minn. 90, 163 N. W. 991, where it was held that it was error to submit the claim of conspiracy to the jury. Moreover the jury were instructed that all who conspired, advised, encouraged, aided or abetted in the commission of the assault were jointly and severally liable, even though they acted independently and without a concerted or common purpose, provided their several acts were intended to produce one resulting event. We think this instruction stated the law as favorably to plaintiff as he had a right to expect.

6. The defendants Suchomel, Kohout and Manz contend that the damages are not inadequate because they were acting in self-defense and did no more than was reasonably necessary to repel plaintiff's attempted assault upon them. Suchomel testified that on entering the saloon he walked up to plaintiff, who was seated, and said: "What do you mean by saying I tore off that Nonpartisan banner?" That plaintiff made no reply, but "jumped up and made a kind of a pass at me and I pushed him in the face." He further testified that a little later plaintiff sneered at him; that he went to him and asked: "What do you mean by laughing at me, sneering at me?" He kind of made a pass at me and I gave him a couple of pokes," and that the defendant Kohout then jumped in between them. Kohout testified that when Suchomel went up to plaintiff the latter "kind of raised up his hand and Tommy hit him and I jumped between them;" that plaintiff pulled his arm back "and I thought he was going to hit me so I cracked him one." Manz testified that plaintiff had a Nonpartisan button pinned on his coat,

and that when he came in someone said: "Grab that button off him. I went right up and grabbed the button and threw it on the ground." According to their own testimony, these defendants were the aggressors, and the amount of the verdict cannot be justified on the ground that they were acting in self-defense.

7. By their verdict, the jury has determined that these three defendants are liable to plaintiff. Liability being established, the damages awarded are clearly inadequate and indicate that passion and prejudice influenced the jury. Henderson v. St. Paul & Duluth R. Co. 52 Minn. 479, 55 N. W. 53; Conrad v. Dolmeier, 57 Minn. 147, 58 N. W. 870; Ford v. Minneapolis Street Ry. Co. 98 Minn. 96, 107 N. W. 817, 8 Ann. Cas. 902; Schmidt v. Chicago, M. & St. P. Ry. Co. 108 Minn. 329, 122 N. W. 9.

The case was tried in September, 1918, when feeling ran high against men who were said to be disloyal. A number of incidents occurring during the trial indicate that plaintiff's alleged disloyalty was persistently injected into the case as justification for the treatment he received, and doubtless this had much to do with the size of the verdict.

Defendants introduced evidence to show that one Mertz and others in the saloon also assaulted plaintiff, and that the major portion of his injuries was caused by such assaults. They contend that they are not liable for the acts of Mertz and his companions and that the verdict is adequate for their part in the affray. This contention is in conflict with the rule laid down in the court's charge to the jury, to which we have already adverted and which we regard as a correct statement of the settled law of this state, insofar as it relates to liability for injuries to one who is the victim of an attack on the part of several persons who jointly participate in it. Warren v. Westrup, 44 Minn. 237, 46 N. W. 347, 20 Am. St. 578; Muenkel v. Muenkel, 143 Minn. 29, 173 N. W. 184.

We conclude that the damages awarded are so inadequate as to entitle plaintiff to a new trial of the issues between him and the defendants Suchomel, Kohout and Manz.

Under the court's instructions, the jury, by failing to return a verdict against Hlinka and the two Mareks, in effect found in their favor. There was sufficient evidence to sustain such a finding. They testified

that they took no part whatever in the affray, and their testimony was corroborated by several witnesses.

The order denying a new trial is reversed and the case is remanded for a retrial of the issues between the plaintiff and the defendants Such-omel, Kohout and Manz only.