## G. F. CASHMAN v. OTTO BREMER.[1]

August 9, 1935.

No. 30,258.

[1]Reported in 262 N. W. 216.

196

*Converse & Spence* and *Carl W. Cummings,* for appellant.

*Doherty, Rumble & Butler,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the order denying him a new trial after a verdict in plaintiff's favor of $11,748.16, and from the judgment entered upon the verdict.

It appears that in 1922 plaintiff came to defendant with a proposition to reëstablish the First State Bank at Correll. Plaintiff then had control of 175 shares of its capital stock. The entire issue was 200 shares. Defendant was induced to come in and become the owner of 60 shares. Plaintiff disposed of his, so that at the time of the occurrences here involved he owned only 5 shares and his wife 20 shares. Plaintiff lived at Correll and managed the bank until he moved to St. Cloud in 1924. From the beginning, one Cregan was cashier until his death in April, 1928, when he was

succeeded by Bandura. At first plaintiff was the president, then vice president. In January, 1927, defendant became president. The commissioner of banks criticized the condition of the bank severely in 1927. To eliminate some real estate and undesirable loans from the assets of the bank, an assessment of 100 per cent was made upon the outstanding stock, and payment thereof appears to have been made before April, 1928. Inferentially it appears that defendant paid the assessment on 83 shares whose owners refused to pay. But more money was needed to rid the bank of real estate as required by the commissioner of banks. Prior to the fifth of April of that year, three farms, known as the Maynard, the Alpress, and the Moss farms, were taken out and transferred or deeded to plaintiff. This action finds its origin in that deal. The complaint, in substance, alleges that defendant, who was then the president of the Correll bank, requested plaintiff to execute his promissory note for $15,000 to the American National Bank of St. Paul, in which defendant had a controlling interest, for the accommodation of defendant and the Correll bank, upon which the St. Paul bank would loan said sum to the Correll bank, the farms to be pledged as collateral security; that defendant promised plaintiff that he would not have to pay the note, that the farms would be sold and thereby the note would be paid; that plaintiff should keep this agreement secret and should represent himself as owner of the farms but account to defendant for their management; and that defendant would hold plaintiff harmless on account of said note. The complaint also averred that defendant fraudulently made such representation and promise with the intention not to perform or keep it; but that plaintiff, in reliance thereon, did execute the note without receiving any consideration. Plaintiff's testimony supported the allegations. The answer denied that the note was an accommodation note and averred that plaintiff bought the farms from the Correll bank and borrowed the money from the St. Paul bank to pay for the same. Defendant testified in support of the answer that plaintiff, being a dealer in lands, desired to acquire the three farms for the amount the Correll bank held them, and requested defendant's aid in securing a loan of $20,000 for him

so that he, plaintiff, might buy the farms. That upon plaintiff's financial statement of his assets and liabilities, defendant, after consulting other officers of the St. Paul bank, informed plaintiff that such statement did not warrant a loan of more than $15,000. Defendant, however, offered to loan plaintiff $5,000 of defendant's own funds. The St. Paul bank made the loan of $15,000 to plaintiff upon his note and the pledge of the farms as collateral, and defendant loaned him $5,000 without note or security. It is not disputed that the $15,000 so loaned was paid or credited to the Correll bank by order of plaintiff, and the $5,000 applied by him on the purchase of the farms and to pay a part of his assessment. The farms stood the Correll bank at that time in the sum of $18,696.85.

When a rift in the friendly relations between the parties occurred, the St. Paul bank demanded payment of the note or its renewal. When it was not forthcoming it foreclosed the collateral (the equity in the farms), applying the proceeds on the note, and brought suit against plaintiff for the balance. Judgment was rendered in favor of the St. Paul bank against the defendant therein, the present plaintiff, for $9,977.65, which he paid. The present action is to recover as damages the amount plaintiff was so forced to pay on said $15,000, less $631.93, collected by him from the farms and not used to pay taxes and interest.

One assignment of error questions the propriety of submitting to the jury a right of recovery for breach of contract, in this language:

"Now, in the event, members of the jury, you find that the plaintiff has failed to prove his claim as to fraud, or, in other words, if you find that the defendant was not guilty of fraud as defined by the court, but you do find by the greater weight of evidence that on or about April 3rd the defendant promised the plaintiff that he, the defendant, would hold the plaintiff harmless by reason of the promissory note for $15,000 made by the plaintiff to the American National Bank, and that in consideration for said promise plaintiff executed the said note and delivered it to the American National Bank, and shall find that the defendant did not perform

such promise, then and in that event your verdict would be for the plaintiff."

The complaint contains elaborate allegations of fraud and deceit on the part of defendant by which plaintiff was induced to sign the $15,000 note for the accommodation of defendant and the Correll bank, on defendant's promise that plaintiff would not be called on to pay it, and that this promise was made by defendant with the fraudulent intent not to fulfill it. Defendant's contention is that under the sweeping allegations of fraud and deceit the court properly opened wide the door for any evidence which in the slightest degree tended to prove the existence of fraud, which evidence would not have been admissible on the simple issue of the making of an agreement and its breach. When plaintiff rested, defendant moved that plaintiff elect whether to rely on fraud or breach of contract. The record does not indicate any ruling. However, counsel on both sides knew before they presented the final argument to the jury that the quoted instruction would be given, and the court, as well as counsel for plaintiff, understood that it was objected to by defendant. The trial court deemed a right of recovery on the ground of deceit and for breach of the contract not inconsistent, and therefore a recovery on either one found proved by the jury was permissible.

A recovery on the ground of fraudulently inducing plaintiff to execute the note in reliance on defendant's agreement to hold plaintiff harmless, which agreement defendant had no intention to perform when made, was submitted substantially in the language of defendant's second request. So there is nothing in this record questioning the propriety of submitting that issue to the jury, although one looks in vain, as in all probability did the jury, for any evidence upon which to predicate a finding that when defendant made the agreement to hold plaintiff harmless, if he ever did so agree, he had a present fraudulent intention not to keep the same. We are therefore remitted to the sole question whether under the complaint it was proper to submit the right to recover upon a finding merely that defendant made a contract to hold plaintiff harmless on his

$15,000 note to the St. Paul bank. There was no contention that defendant did not breach the contract, if a contract existed. The existence of such a contract was the basis for recovery on either theory of recovery submitted. The agreement, if made, was oral. Plaintiff testified to no one being present when made except he himself and defendant. In the nature of things, since defendant denies that it ever was made, he cannot dispute plaintiff's assertion of no one except the two being together. Defendant, however, contends that nothing took place when the note was given other than the question of how plaintiff could be furnished with $20,000 with which to buy the three farms of the Correll bank, and that two other officers of the St. Paul bank were consulted as to the amount it could loan plaintiff upon his financial statement; that they agreed with defendant that $15,000 was the limit; and that defendant personally loaned plaintiff $5,000, so that he obtained the $20,000 he needed to acquire the farms. In determining whether such alleged oral contract was entered into requires as much liberality in the admission of evidence of collateral facts and circumstances tending to establish inference of its existence or nonexistence as on the issue of a present fraudulent intention not to perform a contract entered.

The important question is whether under the complaint alleging fraud and deceit inducing plaintiff to execute his note for the accommodation of defendant and the Correll bank, in reliance upon defendant's agreement to hold plaintiff harmless, there could be a recovery if simply the agreement was proved and damages because of its breach, without showing any fraudulent intention, at the time when it was made, not to perform the agreement. Defendant cites the following cases in support of his contention that the pleading does not justify a recovery unless there be proof permitting the jury to find that defendant at the time when the agreement was entered into had the fraudulent intent not to perform it: Walton v. Perkins, 28 Minn. 413, 10 N. W. 424; Burton v. St. P. M. & M. Ry. Co. 33 Minn. 189, 22 N. W. 300; Cressy v. Republic Creosoting Co. 108 Minn. 349, 122 N. W. 484; Creteau v. C. & N. W. Ry. Co. 113 Minn. 418, 129 N. W. 855. The first case was decided on a

demurrer, holding that a complaint which was clearly for the removal of a cloud upon real estate may not be sustained as against a demurrer on the ground that the facts therein stated show that plaintiff might have brought an action to determine adverse claims upon real estate, nor can it be sustained as a complaint for slander of title unless it shows that defendant's claim is made in bad faith. The Burton case, 33 Minn. 189, 22 N. W. 300, held that upon a complaint for malicious prosecution of a civil action, wherein an attachment was levied on plaintiff's property, he cannot recover as for conversion of the property attached on failing to prove malicious prosecution. The decision in the Cressy case, 108 Minn. 349, 122 N. W. 484, supports plaintiff's position. The dissenters therein sustain defendant. The Creteau case, 113 Minn. 418, 129 N. W. 855, based a right of recovery for injury sustained by an employe in the service of the employer upon a Wisconsin statute, and it was held improper to submit the case for a recovery under the federal employers liability act, which differed materially from the pleaded Wisconsin statute. We think the submission of a right to recover upon a breach of contract to hold plaintiff harmless on the note he signed as an accommodation maker under the instruction here challenged is justified by Kraemer v. Deustermann, 37 Minn. 469, 35 N. W. 276; Wilson v. Fuller, 58 Minn. 149, 59 N. W. 988, 989; Wickstrom v. Swanson, 107 Minn. 482, 120 N. W. 1090; Harris v. Simplex Tractor Co. 140 Minn. 278, 167 N. W. 1045. The last cited case warrants the action of the court in not requiring plaintiff to elect whether to seek recovery for a tort or for breach of contract. Wilson v. Fuller, 58 Minn. 149, 59 N. W. 988, involves the same principle. The court there said [58 Minn. 151]:

"In this case the complaint alleges a fraudulent warranty of title. He has proved the warranty and its breach, but failed to prove the fraud or deceit. But, if all the allegations of the complaint as to fraud and deceit were stricken out, the pleading would still be sufficient to entitle plaintiff to recover upon the warranty; and we are of the opinion that the fact that plaintiff charged that the warranty or representation was fraudulent, but failed to prove

that fact, will not prevent him from recovering for the breach of the warranty."

So here, all the allegations of fraud and deceit could be stricken and still have a good complaint for breach of contract. And if plaintiff proved that defendant agreed to hold plaintiff harmless on his $15,000 note and that defendant failed to do so to plaintiff's damage, there should be a recovery even though no proof of the fraud or deceit alleged is adduced.

Very little need be said concerning the assignments of error on the rulings on the reception or exclusion of evidence. There was some similarity between the accommodation notes executed by Cregan and Bandura, under which the Correll bank obtained a loan and extensions of the same from the St. Paul bank, and the one here involved so as to justify their reception. Under plaintiff's version of the conversation with defendant when the $15,000 note was signed, the renewal of the Cregan note by Bandura was mentioned and defendant's familiarity with that deal disclosed, defendant also objecting to Bandura executing any more accommodation notes because of the necessity of his renewing the stale Cregan note. Assignment No. 2 relates to the same matter. We can see no ground for claiming prejudicial error in the ruling sustaining plaintiff's objection to the introduction of the minute book of the Correll bank when first offered, for it was finally received as to pages marked exhibits 24 and 25, the only parts claimed to be material in this lawsuit, the court, in folio 1432, saying: "I will receive them on the ground they are records of the minutes and as an admission." So defendant had the full benefit of what the minutes disclose, viz.: that the board of directors of Correll bank "on motion duly made, the said bank hereby ratify and confirm said sale of real estate to said Cashman." It describes the three farms involved and recites that Cashman has paid the bank in cash $18,696.85. The minutes purport to be of a special meeting of the board of directors held March 31, 1928, and are signed by plaintiff as vice president of the Correll bank. Defendant also claims error in the cross-examination of his witness Bandura. Bandura was

elected cashier after the death of Cregan, and testified that his first day at the bank was on March 31, 1928; that he typed exhibit 25, the minutes of the meeting of the board of directors on that day, from plaintiff's dictation; that a few days thereafter plaintiff handed him exhibit 24, with the direction to attach it to exhibit 25. This testimony somewhat discredited the minutes and justified a searching cross-examination and the elicitation of the fact that in another action an affidavit of Bandura appeared which contained statements somewhat in conflict with his present testimony. We do not think the cross-examination went beyond legitimate bounds. The court has a wide discretion in allowing cross-examination to go beyond the examination in chief. Wrabek v. Suchomel, 145 Minn. 468, 177 N. W. 764.

To one reading the cold record it would appear that the plaintiff succeeded in gaining the friendship and financial assistance of defendant in entering this bank venture, and, when the venture began to show loss instead of the anticipated gain, plaintiff left defendant to shoulder the loss. And it is rather surprising that the jury should find that a man of ample means who has such confidence in an associate that he lets him have $5,000 without security or even an I. O. U. would break an agreement to hold him harmless, if he had made it. But it must be admitted that it was a jury issue upon this record. Defendant's testimony was positive that the $15,000 note of plaintiff was not an accommodation note, but a direct loan by the St. Paul bank to plaintiff, as was the $5,000 loaned him by defendant personally, to enable plaintiff to purchase the three farms; that nothing was said of an accommodation note for either defendant or the Correll bank or that defendant would hold plaintiff harmless or would see that plaintiff would not have to pay it. Plaintiff as positively testified that defendant discussed with him the necessity of raising enough money to take out of the assets of the Correll bank the three farms mentioned; and, in answer to a question calling for the conversation between them, plaintiff among other things testified that defendant said:

"I will guarantee you, you are dealing with me, and if anything comes up I will take out your note and give it to you. * * *

Cregan and Dahl have signed them. * * * My other cashiers have signed notes. * * * Within a year, or a year and a half at the outside, if it is not cleared up by the sale of the land, I will give you back your note and either take it out myself or transfer it back to Mr. Cregan."

Plaintiff also testified that he told defendant that he, plaintiff, would sign the note if defendant would give him a memorandum of the conditions under which it was signed, whereupon defendant said, "Isn't Otto Bremer's word good?", to which plaintiff answered, "Yes," and signed the note. It is true that in view of the situation of the parties as well as plaintiff's subsequent conduct in ridding himself of his interest in the Correll bank, and apparent admissions of purchase of the farms entered at his direction in the minutes of the board of directors of the Correll bank March 31, 1928, and plaintiff's subsequent management of the farms, much doubt is thrown upon his version of the agreement connected with his signing of the $15,000 note. But plaintiff explained some of his subsequent acts and declaration by testifying that defendant desired to have the public kept under the impression that the Correll bank had no interest in the three farms. No matter how the evidence is considered, it must be conceded that it was for the jury and not the court to determine the fact whether plaintiff signed the $15,000 note as an accommodation note upon an agreement made by defendant to hold plaintiff harmless. There is no dispute but that if it was signed as an accommodation note upon such agreement there was a breach of the agreement and resulting damages in the amount of the verdict.

The order and judgment are affirmed.

DEVANEY, CHIEF JUSTICE, and LORING, JUSTICE (dissenting).

We think it was prejudicial error to admit the Bandura and Cregan notes, together with evidence of the transactions between the Correll bank and the St. Paul bank relating thereto. These transactions were entirely distinct from the alleged Bremer promise even if some of the Cashman money was used by the Correll bank to take up all or part of the Bandura note. That this accommodation

arrangement was made with Dahl or Cregan or Bandura was no evidence that it also was made with Cashman or that Bremer promised to indemnify Cashman. The introduction of this evidence must have influenced the jury to believe that probably a similar arrangement was the basis of the alleged promise by Bremer to indemnify Cashman and that if such arrangement existed it was likely that such a promise was made.

STONE, JUSTICE, took no part in the consideration and decision of this case.

[1]Reported in 262 N. W. 210, 872.